**INTERNATIONAL HARVESTER COMPANY, Plaintiff,**

v.

**DEERE & COMPANY, Defendant.**

No. 79–4020.

United States District Court,
C. D. Illinois.

Oct. 11, 1979.

Howard W. Clement and John L. Cline, Chicago, Ill., Stuart R. Lefstein, Rock Island, Ill., F. David AuBuchon, International Harvester Company, Chicago, Ill., for plaintiff.

Virgil Bozeman and John V. Patton, Moline, Ill., Robert H. Fraser and Louis A. Mok, Los Angeles, Cal., H. Vincent Harsha and Raymond L. Hollister, Deere & Company, Moline, Ill., for defendant.

## DECISION AND ORDER ON MOTION FOR SUMMARY JUDGMENT

ROBERT D. MORGAN, Chief Judge.

This cause arises upon a complaint by plaintiff, International Harvester Company, hereinafter IH, against defendant, Deere & Company, hereinafter Deere, for a declaratory judgment that IH's CX–41 corn head does not infringe any claim of Deere's U.S. Patent No. 3,589,110.[1]

The complaint is intimately related to a prior suit for infringement of that patent, wherein Deere was plaintiff and IH was defendant, in which this court entered a judgment holding the 110 patent to be valid and, in part, infringed by the accused device being then manufactured and marketed by IH. *Deere & Co. v. International Harvester Co.*, 460 F.Supp. 523 (S.D.Ill.1978).

As a response to that decision, IH undertook to develop a corn head which would not infringe the 110 patent claims. The complaint alleges that IH has designed, developed and field tested its CX–41, that it has targeted commencement of production for the early part of 1981, that on April 5, 1979, it provided to Deere a statement defining the details of the CX–41 construction, and drawings showing the drive elements of that unit, and that it requested Deere's assurance that the CX–41 embodiment does not infringe the patent. It is further alleged that Deere's response to that request was to the effect that Deere would require the payment to it by IH of substantial sums of money before IH would have the right to produce and sell the CX–41. That controversy precipitated this complaint.

The cause is now before the court on IH's motion for summary judgment that the CX–41 does not infringe any claim of the patent.[2] It is Deere's position that there remain genuine issues as to material fact for decision, and that summary judgment should be denied.

IH predicates its motion upon its position that facts admitted by Deere in discovery compel the finding that the CX–41 does not infringe the patent. IH also contends that Deere is estopped by its position taken to sustain the validity of the patent in the prior case to now assert that the CX–41 does infringe.

The relevant language of the patent claims bearing upon the merits of this motion was not directly in issue before this court in the prior case. It was there shown, and not seriously contested, that the gear case, drive gear, and drive train of the accused device were literal copies of the same components as claimed in the patent.

The patent relates to the gear drive and support for a corn-harvesting row unit. In essence, a row unit is comprised of two deck plates with a restricted passage therebetween, two gathering chains and two harvesting rolls. The gathering chains are opposed parallel to each other on either side of the restricted passage between the plates. They function to draw the stalks of corn

---

1. The patent was granted to Deere on June 29, 1971, as assignee of Lester Dale Schreiner and Joseph John Shindelar, the patent applicants who are Deere engineers.

2. The patent contains 18 claims. The parties agree that claims 11 through 13, inclusive, 15, 16, and 18 are not infringed.

into and along the length of that passage. The harvesting rolls are likewise opposed on either side of the passage. They function to draw the stalks downward through the passage to draw the ears of corn against the plates and thereby to snap and remove the ears from the stalk for processing by the corn combine. All of such mechanism is old in the art, as is the use of drive gears and drive trains to operate the gathering chains and the rolls. The patent was held valid by reason of the fact that the inventors had rearranged essentially old elements in a non-obvious combination which achieved a result and effect for which practitioners in the art had long striven.

Claims 1, 9, and 10 of the patent are independent claims. All others depend upon one of those three claims. Of critical inquiry in this cause are limitations contained in the independent claims, as follows:

Claim 1: A gear housing, supported upon a transverse beam, "with a gear train within each gear housing including a main drive gear concentric with the drive shaft and rotatable relative thereto." [3]

Claim 9: The same gear housing, with "a gear train within the gear housing including main drive gear means concentric with the drive shaft and drivingly connected therewith . . . .." [4]

Claim 10: The same gear housing, with a "drive mechanism within the gear housing including a gear concentric with the shaft with means interjoining the shaft and gear for effecting rotation in unison." [5]

3. Claim 1: "In a corn harvester attachment for harvesting a plurality of rows of corn and supported forwardly of and on a mobile crop-treating unit, the corn harvester having a main supporting structure including a transverse horizontal beam extending across a plurality of corn rows, the improvement comprising: a main rotatable horizontal drive shaft extending transversely across a plurality of rows and supported on the supporting structure; a plurality of crop-harvesting units, with each adapted to harvest a row of corn and with each having a gear housing adapted to be supported on the beam in any of a plurality of transverse positions along the beam whereby transverse spacing between the respective and adjacent harvesting units may be adjusted in accordance with various spacings between the rows of corn, the gear housing further having a portion with a transverse horizontal opening adapted to circumscribe the transverse drive shaft, and each harvesting unit further having a forwardly projecting rigid framework with a rear end portion fixedly attached to the gear housing and projecting forwardly and downwardly therefrom to a forward end portion; harvesting mechanism supported on the framework and extending between the rear and forward portions thereof; a gear train within each gear housing including a main drive gear concentric with the drive shaft and rotatable relative thereto, the gear train terminating in drive shaft means having drive portions external of the gear housing connected to and for operating the harvest-mechanism; and a clutch drivingly connecting the drive gear of each harvesting unit to the main drive shaft."

4. Claim 9: "In a corn harvester attachment for harvesting a plurality of rows of corn and supported forwardly of and on a mobile crop-treating unit, the corn harvester having a main supporting structure including a transverse horizontal beam extending across a plurality of corn rows, the improvement comprising: a main rotatable horizontal drive shaft extending transversely across a plurality of rows; a plurality of crop-harvesting units, with each adapted to harvest a row of corn and with each unit having a gear housing, the latter having mechanism for supporting the gear housing on the beam in any of a plurality of transverse positions along the beam whereby transverse spacing between the respective and adjacent harvesting units may be adjusted in accordance with various spacings between rows of corn, the gear housing further having a portion with a transverse horizontal opening adapted to circumscribe the transverse drive shaft, each harvesting unit further having a forwardly projecting rigid framework with a rear end portion fixedly attached to the gear housing to support the framework in cantilever fashion from the rear portion of the housing, the framework projecting forwardly and downwardly from the rear portion to a forward end portion; harvesting mechanism supported entirely on the framework and gear housing and extending between the rear and forward portions; and a gear train within the gear housing including main drive gear means concentric with the drive shaft and drivingly connected therewith, the gear train having drive shaft means with drive portions external of the gear housing connected to and for operating the entire harvesting mechanism."

5. Claim 10: "A corn harvester adapted for support on a combine having a main power source comprising: a housing structure adapted for support at its rear end on the forward end of the combine and projecting therefrom to a for-

Mr. Shindelar, one of the inventors, testified in the prior case that the object in developing the patented concept was to achieve a compact design for the row unit, and that the achievement in that respect exceeded the expectations of the inventors. He defined one of the most significant results of the inventive design as the extreme compactness of the unit. He testified that lateral compactness was achieved by the use of a single drive gear, which enabled the inventors to employ smaller gears and other components of the drive mechanism. The single drive gear "enables us" to attain "the very narrow width." As to the independent claims, he testified that the language above quoted from claims 1, 9 and 10 would not permit more than one drive gear and one gear train. He distinguished the Braud exhibits[6] for the reason that Braud employed either three or four drive trains, each motivated by a separate drive gear. It was his position that the result of lateral compactness achieved by the inventors could not be achieved by the Braud device because of the multiple drive gears. In its findings of fact proposed to the court in the earlier case, Deere stated that the use of a single drive gear and a single drive train permitted the achievement of lateral compactness. In the same context, Deere distinguished the Braud exhibits and the Argentine patent[7] in evidence because each employed four gear trains with four drive gears affixed to the main drive shaft. It stresses the single drive gear as the critical element of the claims in its briefing filed with the Court of Appeals.[8]

At the time when the prior decision was rendered, the concept of synergism was deemed to be a determinative factor upon the issue of obviousness under Section 103. Although an inquiry as to synergistic effect is not now a controlling factor,[9] what was said in that context does accurately summarize the thrust of the claimed invention as presented to the court by Deere, to-wit:

"* * * * However, synergistic effect is achieved by reason of the fact that old elements were combined in a manner which had the effect of rewriting the book on the prior art. The gear housing is, at once, the lubricated environment for the gear train, the whole support for the row unit * * *, and it provides the sole support for the row unit as a part of the integrated corn head. The combined effect is the creation of a totally new concept. The effect was to avoid trusses or other supporting means for the row unit and to achieve lateral and verticle compactness of the unit itself." 460 F.Supp. at 533–534.

The achievement of lateral compactness was stressed by Deere as being of value, in that it facilitated the lateral adjustment of the row units on a corn head to accommodate divergent spacing between rows of corn.[10] The CX–41 employs three separate

---

ward end; a transverse harvester framework extending forward of and adapted for connection to the forward end of the housing structure, the harvester framework including a transverse horizontal beam extending across a plurality of corn rows; a transverse drive shaft adjacent the beam and also extending across a plurality of corn rows; a plurality of harvesting structures adapted for simultaneous harvesting of a plurality of corn rows, each harvesting structure including a gear housing at its rear end fixedly attachable at various transverse positions on the beam and fore-and-aft extending structural elements cantilevered forwardly from the gear housing and supporting harvesting mechanism thereon, the gear housing further having transverse opening means for receiving the shaft to pass therethrough; drive mechanism within the gear housing including a gear concentric with the shaft with means interjoining the shaft and gear for effecting rota-

tion in unison, the drive mechanism further having portions external of the housing for driving the entire harvesting mechanism of the respective harvesting structure."

6. Parts catalogue, manual, etc., published by Braud Corporation, a French manufacturer of agricultural equipment.

7. Argentine Patent No. 96,525.

8. The prior decision is pending on appeal in the Court of Appeals for the Seventh Circuit.

9. *Republic Industries, Inc. v. Schlage Lock Co.*, 592 F.2d 963 (7th Cir. 1979).

10. In the context of the issues presented by this motion, there need be no reference to the achievement of vertical compactness by the

drive gears mounted on a single hollow shaft. One drives the gathering chain to the right side of the unit. One drives the opposed gathering chain. The third is a composite gear which drives both of the harvesting rolls.[11]

It is apparent that there is no literal infringement of the patent in the CX–41. Were there any room for doubt upon that score in view of the prior decision, Mr. Shindelar testified on his discovery deposition that the independent claims do not read literally upon the CX–41, because the CX–41 does not have a main drive gear. Thus, the ultimate question is that of equivalents.

Before reaching that ultimate issue, it is necessary to determine whether there is any genuine issue as to any material fact which remains for decision. In addition to the background facts of the earlier case, IH relies upon the depositions of Mr. Shindelar and Mr. Schreiner to show that there remains no material question of fact and that there is no infringement.

Upon his deposition, Mr. Schreiner described the CX–41 as having four gear sets, with the hollow shaft driving four drive gears. He further stated that he found nothing in the CX–41 equivalent to the main drive gear limitation of the patent claims, and that the lateral compactness of the patented combination could not be achieved by four drive gears on a single shaft. In that context, he stated that the single drive gear is a significant element which permits lateral compactness.

Mr. Shindelar, upon his deposition, characterized the CX–41 as having a main drive gear assembly, but not a main drive gear. He described that assembly as four drive gears with a single power input. His testimony upon the question of equivalents is somewhat ambiguous. He first said that the mounting of the four gears upon a hollow shaft with power supplied to the whole assembly was the equivalent of claims 1 and 9 of the patent. He then modified his stance by the statement that the CX–41 unit includes all features and advantages of the patentable invention except lateral compactness. He further stressed that modification by admitting that the hollow shaft of the CX–41 is not the equivalent of a main drive gear in terms of achieving lateral compactness of the unit.

Deere's position that genuine issues of fact do remain for decision rests largely upon the affidavits of two Deere engineers other than the inventors.[12] The affidavits of Mr. James M. Hardy and Mr. Bernard E. Romig are parallel in their content. Each states that both the Braud and Argentine row units have three gears for each unit mounted directly on the main drive shaft, as contrasted to the patented device and the CX–41, which have the drive gears mounted upon a hollow shaft through which the

patented combination. That result was not intimately affected by the use of a single drive gear in the row unit.

11. There are four gear trains, since each roll is propelled by one side of a composite gear. On his discovery deposition, Mr. Shindelar characterized the CX–41 as having four gears, with a single power input.

12. Deere attached as exhibits to its opposition to this motion two written statements by IH's counsel, which Deere deems to be inconsistent with the IH assertion that no genuine issues of fact remain. The first is a letter to the court requesting a pretrial setting and stating that it did not appear that this is an appropriate case for a summary judgment. The second is a communication to Deere's counsel of the issues as conceived by IH.

Deere is straining with its reliance upon these exhibits as having any relevant bearing upon the issue. A final pretrial conference was scheduled, and it was in that context that IH submitted to Deere its statement of the issues. Subsequently, IH filed its motion for summary judgment, which is directed to only one of those several issues. It is not seen how the antecedent statement of counsel's opinion, by letter, can be construed as an admission adverse to the pending motion.

By the limitation of its motion, IH admits the obvious, namely, that there are factual issues which would require a trial upon all but that one issue upon which its motion rests. In the context of this litigation, a disposition in favor of IH upon its motion will decide the whole controversy. Its recognition that a trial would involve other issues does not derogate from its right to seek judgment upon that one issue.

main drive shaft extends, and which are coupled by a clutch arrangement to provide the power source between the main drive shaft and the gearing. Each further states that the several gears mounted on the hollow shaft of the CX–41 are, in conjunction with the hollow shaft, "in effect" a single gear. It does not appear what relationship, if any, Messrs. Hardy and Romig had to the patent or to this litigation; but, if their affidavits are taken at face value, each fails to state that the CX–41 achieves the same effect and result as does the patented invention.

■ Deere also relies upon deposition testimony of IH engineers involving similarity between the CX–41 and a corn head manufactured by White Motor Corporation, a Canadian manufacturer. Related to that reliance, Deere stresses the fact that White is a licensee under the patent. The Deere-White license agreement is submitted to the court as an exhibit to IH's reply brief. Two things are clear on the face of that agreement. First, it was executed prior to the trial and decision in the earlier case. Second, it relates to three Deere patents.[13] It is not perceived that the fact of that license and the fact of similarity between the CX–41 and the White unit could have any relevant bearing on the issue presented by this motion. The existence of the White agreement might have some relevant bearing upon the validity of the patent, but validity is not in issue here. If one indulges the assumption that White does pay royalties under the patent in suit, and the further assumption that such royalties are paid because White believes that its multiple drive gears are equivalent to the main drive gear of the patent, one could still only reach the inference that a manufacturer, who is not a party to this suit, does, or might, believe that its own unit might infringe. What White believes can have no relevant bearing upon proper disposition of this motion.

■■ In most cases, a motion for summary judgment should fail whenever reliance must be placed upon the testimonial weight of a discovery deposition. That is true because the very fact that reliance is based upon the oral testimony of a witness, can hardly invoke the legal conclusion that the testimony is irrefutable. However, that principle has no bearing upon this cause. First, to the extent that there is reliance upon depositions, that reliance is placed upon the statements of the inventors themselves. They are the persons best qualified to testify to the scope of their own invention. Both have testified on deposition that there is no equivalence between the multi-gear drive of CX–41 and the independent claims of the patent. Though Mr. Shindelar did equivocate in his testimony, he testified that there was no equivalence as to lateral compactness. That is true because the lateral compactness obtainable by the use of one drive gear cannot be achieved when three (or four) drive gears are employed, and lateral compactness was identified by the inventors in testimony in the prior case as a prime object and achievement of their invention.

The Hardy and Romig affidavits appear to be designedly drawn to create a conflict in evidence between Deere engineers. If there did exist, by deposition or otherwise, any legitimate conflict in evidence on a material issue, however slight, summary judgment would be improper. No legitimate conflict can be created, however, by Deere's use of affidavits designed to contradict or impeach Deere's own admissions and the testimony of its inventors. It must be concluded that there are no genuine issues as to any material fact presented which would militate against consideration of the merits of the motion for summary judgment.

As previously noted, it is not contended by Deere that the CX–41 literally infringes the patent. The claims are limited to a single drive gear which drives the total row unit mechanism. The CX–41 has three separate drive gears. Deere also must be estopped to contend, through the doctrine of equivalents, that the CX–41 does infringe

13. The 110 patent; Jones U.S. Patent 3,609,948; and Canadian Patent 909,519.

the patent claims. It obtained a determination of validity in the prior case by its assertion and proof that the use of a single drive gear was a vital element of the invention. In the development process, the inventors pursued the single object of a design which would permit the development of a more compact row unit. The single drive gear was the feature which was advanced by Deere as achieving several valuable objects, *inter alia* :

a. Lateral compactness, which Deere emphasized as one of the most significant results of the patented design;

b. It permitted the employment of smaller gears, smaller shafts, and a more compact gear housing; and

c. The compactness made possible by the use of a single gear drive reduced the weight of the row unit.

■ As Mr. Shindelar testified in the prior case, the single gear allows us to achieve lateral compactness, and "allows us" to attain "the very narrow width." There, also, Deere asserted that the Braud and Argentine embodiments were distinguishable because both employed multiple drive gears upon each row unit. It must be concluded that Deere is now estopped to disavow that distinction and to assert that three (or four) drive gears are the equivalent of one.

Although the precise factual context differs somewhat from this situation, the statement in *Union Carbide & Carbon Corp. v. Graver Tank & Manufacturing Co.*, 196 F.2d 103, 112 (7th Cir. 1952), is apt, to-wit:

"In our opinion, the application of the doctrine of equivalency in this case is to ignore the teachings of the patent, * * and, more pointedly perhaps, the representations by which [the validity of the claims] has been sustained in the courts. While the difference between plaintiff's composition and those accused may not be great, it is that difference which distinguished plaintiff's composition from the prior art and which enabled it to sustain the validity of its grant. It is now estopped from claiming otherwise."

■ Arguments and representations made in court to sustain the validity of a patent claim bar the patentee from asserting that units embodying the changes distinguished by him in earlier litigation "can be considered equivalent." *Marston v. J. C. Penney Company, Inc.*, 324 F.Supp. 889, 894 (E.D.Va.1971), *aff'd per curiam*, 469 F.2d 694 (4th Cir. 1972). To like effect, *Devex Corp. v. Houdaille Industries, Inc.*, 382 F.2d 17, 22 (7th Cir. 1967).

■ Even apart from the question of estoppel, no equivalency appears to exist between the CX–41 and the patent claims. To show equivalency, an accused device must be shown to perform substantially the same function in substantially the same way to achieve the same result. *Graver Tank & Mfg. Co., Inc. v. Linde Air Products Co.*, 339 U.S. 605, 608, 70 S.Ct. 854, 94 L.Ed. 1097 (1950). There must also appear a real identity of means, operation, and result. *Reese v. Elkhart Welding and Boiler Works, Inc.*, 447 F.2d 517, 527 (7th Cir. 1971).

■ Here there is no identity of means. In the CX–41 three separate drive gears drive the four mobile components of the row unit. The patent claims are restricted to one drive gear which drives the total unit. There is lacking here, also, any identity of result. By the use of three drive gears instead of one, plaintiff sacrificed the very result upon which Deere placed great stress, namely, lateral compactness of the unit. The material facts related to the one issue upon which summary judgment is sought must thus be deemed to be admitted by Deere. Those uncontested facts conclusively demonstrate that the CX–41 does not infringe the 110 patent. The motion must be allowed.

Accordingly, IT IS ORDERED that judgment enter for IH, declaring that the CX–41 row unit, as exemplified in this case, does not infringe any claim of U. S. Patent No. 3,589,110, and that plaintiff shall recover its costs of suit.