**DEERE & COMPANY, Plaintiff,**

v.

**INTERNATIONAL HARVESTER COMPANY, Defendant.**

**No. RI–CIV–76–0020.**

United States District Court,
C. D. Illinois.

July 10, 1980.

Virgil Bozeman and John V. Patton, Moline, Ill., Robert H. Fraser and Louis A. Mok, Los Angeles, Cal., Harold V. Harsha, William A. Murray and Raymond L. Hollister, Moline, Ill., for plaintiff.

Stuart R. Lefstein, Rock Island, Ill., Howard W. Clement, Melvin F. Jager, Thomas G. Scavone, Floyd B. Harman and F. David AuBuchon, International Harvester Co., Chicago, Ill., for defendant.

## SUPPLEMENTAL FINDINGS AND ORDERS.

ROBERT D. MORGAN, Chief Judge.

This suit by Deere against International Harvester for patent infringement is now before the court pursuant to an order of remand entered by the Court of Appeals for the Seventh Circuit. The matter seems placed in sound perspective by the following chronological statement.

The cause was tried before the court without a jury. On October 18, 1978, this court filed its decision and entered its judgment holding asserted claims 1–10, inclusive, 14 and 17 of the patent in suit[1] to be valid, and holding asserted claims 1–3, inclusive, and 6–9, inclusive, to be infringed by IH's accused device. *Deere & Co. v. International Harvester Co.*, 460 F.Supp. 523 (S.D.Ill.1978).

Nine prior art references were cited by the patent examiner upon his processing the application for the patent.[2] To support its defense assertion that the combination embodied in the claims would have been obvious to persons having ordinary skill in the art to which the subject matter pertained at the time when the claimed invention was made (35 U.S.C. § 103), IH introduced in evidence some 22 prior art references, including 17 references which had not been cited by the patent examiner.[3] On such defense of obviousness, this court found that the uncited prior art references were the equivalent of, and no better than, those references which had been cited by the patent examiner. The defense was rejected by the simple statement of an ultimate finding that the claimed invention would not have been obvious within the intendment of Section 103.

On an appeal from that judgment, the Court of Appeals, by an unpublished order,[4] decided that the failure of this court "to articulate more adequately its rationale" for that ultimate finding of non-obvious-ness, "in light of the standards set forth in" *Graham v. John Deere Co.*, 383 U.S. 1, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966), precluded "proper appellate review of the issue of the validity of the Deere patent." That order reversed the judgment and remanded the cause with specific instructions to this court "to make detailed findings of the following in conformity with Graham":

"1. The state of the prior art with reference to each of the several old elements that were combined to constitute the invention claimed in the Deere patent.

"2. With respect to each of those elements, a comparison of the 'equivalent' prior art cited to the Examiner with prior art not cited.

"3. The level of skill in the art.

"4. The reasons why the evidence shows the patented combination of the above elements would not have been obvious to one skilled in the art."

Thus, this court is directed to make supplemental findings of fact related to each of the above areas of inquiry, and herein undertakes to do precisely that.

This court convened an informal conference with counsel shortly after January 23, 1980, at a time before the record on remand had been returned to this court, to discuss the content and purport of the remand order. At that time it was suggested to counsel that the remand order basically required supplementation of the original decision by the framing of supplemental findings of fact. Deere was requested to prepare and submit to the court its proposals for supplemental findings responsive to the command of the remand order, with IH to submit its response to such proposals after the receipt of same. IH did suggest at that time that it contemplated the filing of other responsive material, including a motion to reopen the evidentiary record to permit IH to adduce further evidence.

1. Schreiner, et al., Patent No. 3,589,110.

2. Note 10, *infra.*

3. Note 11, *infra.*

4. *Deere v. Int. Harv.*, 618 F.2d 110, 7th Cir. 1980.

Deere's proposals were filed following the return of the trial record to this court. Thereafter, IH filed a response and, also, a supplemental brief related to the question of validity, as well as its motion to reopen the trial record to permit it to introduce "new" evidence which was asserted to relate to the issue of validity.

A hearing on that motion and a post-remand conference were held on May 16, 1980. At that time, the IH motion to reopen the trial was denied, and counsel were advised that the argumentative bases of IH's supplemental brief were largely rejected by the court as being not consistent with the further proceedings which the remand order is deemed to require. For perspective only, a brief summary statement as to each the IH supplemental brief and motion to reopen follows.

By its supplemental brief, IH sought to disavow all of its uncited prior art references, except the Braud publications,[5] the Dort patent,[6] and the Schwartz patent.[7] IH asserted the position that it does not contest the validity of claim 10 and its dependent claims, in view of this court's original determination that IH's accused device did not infringe such claims. IH further asserted that this court's original construction of the patent claims, plus its finding that claim 10 and certain other claims were not infringed, rendered its prior art references, other than those above specifically mentioned, unnecessary to support its position.

Although adoption of that suggested course would simplify disposition, the mandate of the Court of Appeals cannot be limited to permit that course. Also, IH's position in that regard presumes a reliance upon the original judgment, notwithstanding the fact that that judgment has been reversed and the same now has no force and effect. It seems necessary to evaluate all uncited prior art in evidence in the light of the *Graham* criteria for obviousness.

The motion by IH to reopen the trial record rests upon its claimed need to introduce "new" evidence which is said to have a relevant bearing upon the issue of validity. Its assertion as to "new" evidence is said to find a basis in two contexts, namely, Deere's dealings with White Motor Company and a declaratory judgment suit filed by IH against Deere in this court while the appeal was pending in the instant cause. *International Harvester Co. v. Deere & Company*, 478 F.Supp. 411 (C.D.Ill.1979).

The precise contention of IH must be articulated with reference to that declaratory judgment action. IH prayed a declaration that a production model corn head being developed by it when its complaint was filed did not infringe the claims of the subject patent. In its original decision in this cause, this court construed the claims to be limited in scope to the employment of a single drive gear and a single integrated drive train for all elements of each corn head row unit. The IH production model, which was the subject of the declaratory judgment, employed four drive gears and four attendant drive trains. Because of that distinction, this court found and declared that the IH production model did not infringe the patent here in suit.[8]

IH recites the factual basis for that complaint as reflecting that Deere asserts a scope for its claims which is broader than the scope asserted by it in this cause in support of the validity of the patent. It also relies upon evidence, assertedly discovered in the course of discovery in the declaratory judgment action, which it deems to show that Deere had asserted a similar and inconsistent scope to the claims against

---

5. DX 1.

6. DX 24.

7. DX 27.

8. On June 12, 1980, the Court of Appeals reversed the IH declaratory judgment, that court holding that there was no justiciable controversy and, thus, no subject-matter jurisdiction. That decision rested in part upon the fact that the instant cause is pending, unresolved, and there is no final decision upon the issue of the validity of the patent. *International Harvester Co. v. Deere & Co.*, 623 F.2d 1207, 7th Cir. 1980.

White, both before and after the trial in this cause.[9]

The motion to reopen the evidentiary record was denied because of the court's view that such course was neither commanded by the remand order nor appropriate to the further proceedings in this cause which that order requires. It is noted also that the circumstances attendant upon Deere's dealings with White might have been evidentially developed in the trial of this cause. The White license was in evidence. IH was aware of an equivocal statement by Deere that it considered the White corn head to embody the teachings of the patent in suit. IH was then in a position to have advised itself as to the structural details of the White unit even if it, in fact, then lacked that specific knowledge. The proffered evidence is deemed to bear upon prospective claims by Deere of infringement and, potentially, upon any prospective assertion of the abuse by Deere of its position under the patent.

After the Court of Appeals reversed the declaratory judgment, IH filed a motion for reconsideration of the denial of its motion to reopen the evidentiary record. That motion was denied by a written order of June 19, 1980. Finally, IH also filed a supplemental brief on the scope of the claims, which largely reasserts its position based upon the White circumstances and the declaratory judgment action.

This court's prior decision made findings of fact and stated conclusions of law pertinent to all issues presented upon the trial of the cause. The reversal was limited to the found inadequacy of the findings of fact which related to the issue of obviousness. Thus, the merits of that prior decision are affected only in the context of the obviousness findings.

There are two matters which are not directly related to the obviousness issue which do require correction.

First, the court's attention is now directed to an insignificant misstatement of fact contained in original numerical finding 12. That finding attributes the authorship of a document to IH's chief engineer. In fact, the author of that document was IH's market planning manager, although it is also the fact that his production of the document was directly responsive to a memorandum to him from IH's chief engineer. Although the substance of that finding is not affected, that inadvertent misstatement is corrected.

Second, conclusion of law number 12 in the original decision has been rendered erroneous by intervening events. In reliance upon *St. Regis Paper Co. v. Bemis Co., Inc.*, 549 F.2d 833, 838 (7th Cir. 1977), and other precedents, it was stated in that conclusion that, "A combination patent is not valid unless the combination of elements achieves a synergistic effect." That legal premise was rejected as a criterion for determining obviousness in *Republic Industries, Inc. v. Schlage Lock Co.*, 592 F.2d 963, 967–972 (7th Cir. 1979). Thus, conclusion of law number 12 has now become an erroneous statement of the law and the same is disavowed.

Having considered all arguments and all materials submitted by the parties, and having fully reexamined and reevaluated the prior art references in evidence, the court concludes that the original judgment was in all respects correct. Consistently with that conclusion, the following supplemental findings of fact are made and the prior decision is reaffirmed as here supplemented.

## SUPPLEMENTAL FINDINGS OF FACT

Orderly presentation with maximum clarity of the relationships between the evi-

**9.** White, an agricultural equipment manufacturer, negotiated a license agreement with Deere for White's practice of the teachings of the patent in suit and two other Deere patents. The White license agreement was introduced in evidence in the trial of this cause as PX 59. Accepting such discovery deposition testimony at face value, it appears that Deere's technical expert testified that neither the White corn head nor the proposed IH model, both of which employ four drive trains, literally infringes the claim of the patent in suit. He did state the opinion, however, that equivalence did exist between the IH unit and the patent claims.

dence and the findings, with minimum repetition, suggests some combination and re-arrangement of the Court of Appeals specifications for findings numbered 1, 2, and 3, leading to the final number 4, being precisely the reasons why the evidence shows the patented combination of elements would not have been obvious to one skilled in the art.

### 1. THE ART AND THE LEVEL OF SKILL IN THE ART

a. The pertinent art involved is the art of agricultural equipment design, and specifically, the engineering design of mechanisms for the mechanical harvesting of corn.

b. The credentials of the several technical experts who testified for the respective parties at the trial are deemed to disclose the level of the ordinary skill in the pertinent art at the time when the claimed invention was made. That level of skill was the technical skill possessed by persons who had an educational background in mechanical engineering or agricultural equipment engineering, and at least several years of experience in the engineering design of corn harvesting equipment.

### 2. SCOPE AND CONTENT OF THE PRIOR ART AND DIFFERENCES BETWEEN THE PRIOR ART AND THE CLAIMS ASSERTED

c. IH's principal contention on the question of validity is that by combining various prior art references, the patented corn head could have been created, and that such combinations of prior art would have been obvious to a person having ordinary skill in the art at the time the invention was made.

d. Nine prior art references were before the Patent Office upon Deere's application.[10] All are before the court as exhibits.

In support of its defense of obviousness, IH relied upon certain references which were before the Patent Office and introduced some 17 additional references.[11] Its principal reliance was placed at trial upon the Ariens 348 patent and the Braud parts manual and related information published by the Braud Corporation in France. The court has reviewed and compared all references submitted to it and finds that the references introduced by IH are the equivalent of, and no better than, the prior art references which were before the Patent Examiner. It was only by his use of a number of combinations of the asserted prior art that IH's expert witness could state the opinion that it would have been obvious to one of ordinary skill in the art to combine such diverse elements into the structure claimed as inventive.

e. The evidence discloses that no single prior art reference contains all of the elements of the claimed invention. Although IH's expert did at one point testify that in his opinion all of the elements of claim 9 could be found in a diagram he had prepared from the Braud parts catalog, that testimony was controverted by plaintiff's expert. The court finds the testimony of Deere's expert more convincing, particularly after having independently examined the prior art. As will be pointed out in the findings that follow, the Braud references fail to disclose or suggest important elements of the claimed invention, and although such elements may be found in isolated items of prior art, the court finds that incorporation of these elements into Braud would not have been obvious.

f. IH primarily relies upon the following prior art references to support its position that the combination would have been obvi-

10. Those references are: Jones U.S. application No. 562,416, later issued as U.S. Patent 3,609,-948; Price No. 1,390,159; Karlsson No. 3,101,-579; Ashton No. 3,271,940; Hibbs No. 1,090,-150; Hitchcock No. 1,936,760; Ashton No. 3,520,121; French Patents, Braud, 1,268,615 and 79,932, the latter stipulated to be identical to British Braud Patents 989,114 and 984,356, introduced in evidence by defendant.

11. Ariens 2,616,348; Dort 2,647,353; Andrews 2,525,058; Thieman 2,004,711; Schwartz 3,070,939; Claas 3,201,928; Dede 2,935,139; Buhr 2,758,555; Argentine Patent 96,525; British Braud 989,114; British Braud 984,356; Braud (French) parts manual and related documents; John Deere 34 Corn Head; Massey-Ferguson Parts Manual; IH 40 Corn Head; IH 24 Corn Picker; and advertising brochures and materials related to Ariens Tillivator.

ous, to-wit: U.S. patents to Ariens, Ashton 940, Jones, Dort, Schwartz, Andrews, and Thieman; Argentine patent 525; materials related to the Ariens Tillivator; the Braud parts manual and other publications; the IH 40 corn head; and the John Deere 34 corn head. Of those references, the Ashton patent was cited by the Patent Examiner, and the Jones patent was before the Examiner by virtue of the reference in the patent application to the copending Jones patent application, which later ripened into the Jones patent. The IH 40 corn head structure is shown in the Karlsson patent which was cited by the Examiner.

g. Turning now to a consideration of the teachings of the various items of prior art listed, the Braud corn harvester, as disclosed in the Braud parts manual and related documents, has row units, each including harvesting mechanism carried by a framework to which is attached a gear case through which a single drive shaft passes. The gear case encloses four gear trains for operating the harvesting mechanism, each train having a drive gear fixed to the drive shaft. Braud lacks the single gear train of the claims; moreover, there is neither a single main input gear within the gear case coupled to the drive shaft for driving all of the harvesting elements of each row unit, nor a clutch protecting individual row units. Each row unit of the Braud corn head is pivoted at its rear end in a pair of trunnions bolted to a forwardly extending flange on the transverse auger trough. The arrangement is such that the drive shaft forms the pivot axis of the row units, and the front ends of the row units are raised and supported by hydraulic jacks connected to a horizontal beam extending transversely under the row units and attached thereto by sets of struts. In addition, lateral load-bearing struts or braces extending from the beam also serve to support the row units. Removal of the struts supporting the row units of the Braud corn head would cause the front ends of the row units to rest on the ground. Thus, the row units of the Braud corn head are not cantilevered structures, and there is no suggestion of such mounting.

h. Ariens and the advertising brochures and other materials related to the Ariens "Tillivator" are directed to a rotary cultivator intended to work the ground between rows of a standing crop. The Ariens cultivator is a multiple unit device, with each unit having a forward end pivotally supported from a drive shaft and a rear end supported on the ground during operation. Each unit has a drive sprocket connected to the drive shaft through a clutch which can slide relative to the drive shaft. The drive sprocket is connected to a rotary ground-working tool through a drive chain. IH's expert conceded that Ariens is not a corn harvesting attachment, that it does not have a gear housing, let alone a gear housing supported in cantilever fashion, and that it does not have any gears or a gear train. In addition, the chain case of Ariens is not supported on a transverse beam and does not support a forwardly projecting, rigid framework. Ariens discloses neither a harvesting mechanism nor even the concept of driving a plurality of functional elements in each row unit with a single input to that row unit.

i. The cited Ashton 940 and the Massey-Ferguson Parts Book, which discloses parts of a commercial embodiment of the Ashton 940 patent, pertain to a corn harvester attachment having a plurality of harvesting units adjustably mounted on a main beam. Each harvesting unit is made up of an open frame assembly which is clamped to the beam and supports the drive gears, and left and right arm assemblies which are cantilevered from the open frame assembly. The frame assembly and arm assemblies support the harvesting mechanism. The gatherer chains and stalk rolls are separately driven by telescoping drive shafts and a plurality of input gears fixed to the shafts. The gatherer chain drive shaft and stalk roll drive shaft are driven by separate chains from a single dual chain sprocket connected to a third shaft through a clutch. Ashton does not disclose a gear housing, a single gear train, a main drive gear for operating the entire harvesting mechanism, a clutch for protecting each row unit, or a main

drive shaft for operating the entire row unit harvesting mechanism.

j. The Jones patent, the application for which was before the Patent Office, discloses a multiple row corn head which is adjustable for row spacing. Each harvesting row unit is bolted to a pair of frame members on the front and rear of a transverse augur trough, and by removal of the bolts the units can be adjusted for row spacing. A transverse drive shaft positioned above and to the rear of the row units provides the power to the row units through a chain and sprocket drive arrangement. The drive sprocket of each row unit is connected to the drive shaft through a slip clutch, and the drive shaft is telescopic to permit adjustment of the sprockets when adjusting for row spacing. Jones does not have a gear housing which encloses the entire drive for a row unit, a gear housing supporting the unit framework, a single main beam on which the row units are mounted, a single gear train with a main drive gear for driving all of the harvesting mechanism, or cantilever mounting of the row unit framework.

k. The IH 40 Corn Head, which is shown in the Karlsson patent cited by the Patent Office, has a plurality of harvesting units adjustable for row spacing. Each unit includes a built-up framework which supports the harvesting mechanism as well as the drive gears and sprockets for that mechanism. The rigid framework is bolted to a pair of spaced frame members on the main supporting structure. The stalk rolls are driven by a chain which extends across a plurality of rows below the units. The gatherer chains are driven by a sectionalized shaft extending across a plurality of rows. Each gatherer chain is driven by a separate bevel gear train that includes a drive gear fixed to the sectionalized shaft. When adjusting for row spacing, it is necessary to replace a section of the shaft between adjacent row units. The IH 40 does not have a main beam supporting the harvesting units, a main drive shaft for driving all of the harvesting mechanisms, a gear housing, a gear train for operating the entire harvesting mechanism, or a clutch for protecting each row unit.

l. The John Deere 34 Corn Head is similar to the IH 40 Corn Head and differs therefrom only in that the individual row units are adjustable on the gatherer chain drive shaft, whereas intermediate sections of the gatherer chain drive shaft in the IH 40 have to be replaced when adjusting row spacing. The specific feature that distinguishes the John Deere 34 over the IH 40 is the use of bevel drive gears that are slidable on the gatherer chain drive shaft to facilitate row spacing adjustments. That feature, however, is shown in Price 1,390,-159, which was cited by the Patent Office.

m. The Dort patent does not relate to a combine-mounted corn head but discloses, instead, a two-row, tractor-mounted corn picker. Thus, basic structural elements of the claimed corn head are absent, including the transverse main beam and the main drive shaft extending transversely across a plurality of rows. In Dort, each row unit has a main gear casing, but this casing does not enclose all of the harvesting unit gears. Part of the gear drive for each row unit in Dort is in a gear case separate and remote from the main gear casing. Each main gear casing is driven by its own shaft, and these shafts extend longitudinally and not transversely. Rather than being mounted on a main transverse beam, the main gear casing is secured to the forward end of a torque arm pivoted at its rear end to the tractor axle, and the drive shaft for that unit extends through the torque arm. The gear casing supports a snapping unit, a first elevator, and a husking unit. The snapping unit includes an inner gatherer subassembly which is cantilevered from the gear casing, and an outer gatherer subassembly which has a portion attached to the gear casing. That subassembly is not truly cantilevered therefrom because it is part of a built-up structure and relies upon other structural components extending forwardly and rearwardly of the gear housing for support. The Dort patent, owned by plaintiff, was embodied in an experimental machine that was not put into production because the cantilevering concept used therein did not

work satisfactorily. The concept was abandoned and discouraged further development in that direction.

n. The Schwartz patent is directed to a multiple-row, nonadjustable corn head, with each row unit driven by a bevel gear fixed to a drive shaft. The drawings of the patent show that the Schwartz machine is both bulky and complex, with much of the structure situated below the row units. This patent does not disclose a gear housing; the various driven elements are not only exposed but are spread out over a considerable distance and distributed throughout the row units. Schwartz also fails to disclose row spacing adjustability, cantilevered row units, and individual row unit clutch protection.

o. Argentine patent No. 96,525 discloses a multiple row corn harvesting attachment with each harvesting unit having an enclosed gear case through which a single segmented drive shaft passes. Each gear case encloses four bevel gear trains for operating the harvesting mechanism, each gear train having a drive gear fixed to the drive shaft. This patent does not disclose a main beam, a rigid framework for supporting the harvesting mechanism, or give any indication as to how the gear housing is mounted or supported. The Argentine patent furthermore fails to disclose a single input gear for driving the entire harvesting mechanism, or a clutch providing individual row unit protection.

p. The Andrews patent pertains to a two-row, tractor-mounted corn picker. Each row unit has a gear casing and a drive shaft extends between the two gear casings. This patent does not relate to a combine-mounted corn head and does not disclose a number of claimed elements, including the gear train for driving the entire harvesting mechanism; beam-mounted row units; row unit adjustability; individual row unit clutch protection; the enclosure of all of the harvesting unit gears within the gear casing; or the cantilevering of the row unit framework from the gear casing.

q. The Thieman patent, like Andrews, discloses a two-row, tractor-mounted corn picker. In Thieman, each row unit includes a gear housing, a drive shaft extending between the two gear housings, and a bevel gear train having an input gear attached to a part of the shaft within the housings. The gear housings of this corn picker are pivotably mounted on a beam which is supported above the tractor, and each housing contains only a pair of bevel gears whose sole function is to change the direction of drive from the drive shaft. Most of the drive gears for operating the row units are external of the gear housing and the row units are not adjustable. Among other things, there is no disclosure of a main transverse beam or of a gear train completely enclosed within a housing, no disclosure of individual row unit clutch protection, and no suggestion that the gear housing supports the row unit framework in cantilever fashion.

r. The remaining items of prior art introduced by defendant are: Ashton patent 3,520,121, Braud British patents 989,114 and 984,356; Claas patent 3,201,928; Dede patent 2,935,139; Buhr patent 2,785,555; and the IH 24 Corn Picker. Although some general testimony was received concerning some of these references, defendant presented no evidence at the trial relating any of them to the elements of the claims.

s. As the preceding findings show, there are numerous differences apparent between the claims of the patent in suit and each of the individual items of prior art. The best that can be said is that the individual elements of the claimed invention may be found in the prior art, but those elements are scattered among the various references. In addition, each reference lacks at least several of the claimed elements.

3. *COMPARISON OF PRIOR ART CITED BY THE PATENT OFFICE EXAMINER WITH PRIOR ART NOT CITED*

t. The uncited prior art introduced in evidence by IH is no better than the art which was before the Patent Examiner. All of the elements which IH selected from isolated, uncited references are also found in various of the prior art references which were cited by the Examiner.

u. The row unit clutch that defendant finds in the uncited Ariens cultivator is present in the Jones patent application. Likewise, a single main drive shaft is found in the cited Price and Jones patents, as well as the uncited Braud publications and the Argentine, Thieman, and Andrews patents. The broad concept of enclosing gears in a gear housing, for which IH relied upon the Braud publications, is well known and found in the cited Jones and Hitchcock patents. The cantilevering concept, for which IH relies primarily on Dort, is suggested by the cited Ashton patent in a context (corn heads) that is more relevant than Dort, which pertains to tractor-mounted corn pickers. Finally, the disclosure in the Schwartz patent of the main drive gear for driving the entire harvesting mechanism is no better than that taught by Jones.

v. That the art before the Patent Office in these respects is at least the equivalent of the art introduced by IH, is confirmed by the fact that at the trial, IH's expert used the uncited and cited art interchangeably in various combinations of prior art.

w. Ariens and Jones were asserted interchangeably against claim 1 for their teaching of a row unit clutch; the Dort and Argentine patents were given equal status with the cited Ashton patent for the cantilevering concept; and Braud, Schwartz, the Argentine patent, Andrews, and Thieman were each equated to the cited Jones patent for a teaching of a single main drive shaft.

x. IH presented no evidence that any of the uncited prior art that it relied upon is better than the art that was before the Patent Office.

y. The opinion of IH's expert that the Ariens cultivator is the best single reference, and that this reference by itself suggested to one of ordinary skill in the art how to design the D 40 and IH 800 corn heads, can be given no weight. He made no comparison between Ariens and any of the prior art cited by the Patent Office, and did not explain or elaborate on how Ariens suggested the design of the D 40 and IH 800 corn heads to one with ordinary skill. A production sample of the Ariens cultivator, as well as portions of production D 40 and IH 800 corn heads, were admitted in evidence and on display in the courtroom during the trial. Testimony was received in relation to all three of these machines, and the court made its own independent comparison between the Ariens cultivator on the one hand and the patented and accused corn heads on the other. IH's expert admitted, and from an independent evaluation this court finds, that Ariens is not directed to a corn harvesting mechanism; therefore, Ariens does not address the problems associated with corn harvesters, for example, powering rolls and chains through a gear train or carrying the weight of these mechanisms. The opinion of Deere's expert that one with ordinary skill in the art could not build a corn head based on the Ariens cultivator is supported factually in his testimony. He testified, and from an independent review this court finds, that the chain case in Ariens is not rigidly mounted on a transverse beam but pivoted from a shaft, and does not support a forwardly projecting rigid framework. He also testified, and this court finds, that Ariens does not have any harvesting mechanism and does not disclose the concept of driving a plurality of functional elements with a single input gear.

z. IH's answers to Deere's interrogatories Nos. 348–79 appear to concede that the Ashton and Jones patents, for example, which were before the Patent Office, constitute art that is at least as good as the uncited art later raised by IH.

aa. The Patent Office considered the best prior art, and the presumption of validity is therefore strengthened.

4. *REASONS WHY THE EVIDENCE SHOWS THE PATENTED COMBINATION OF ELEMENTS WOULD NOT HAVE BEEN OBVIOUS TO ONE SKILLED IN THE ART*

bb. The three principal combinations of prior art asserted by IH against independent claim 1 are (a) Braud in combination with the Schwartz patent (for a main drive gear), further combined with either Ariens or the Jones patent (for a clutch); (b) the John Deere 34 in combination with the

Schwartz patent (for a single drive shaft and drive gear), further in combination with a clutch; and (c) the Ashton patent in combination with either the Schwartz patent or Thieman patent (for a single drive shaft), further combined with either the Jones patent or Ariens (for a clutch).

cc. The three basic combinations of prior art applied by IH against independent claim 9 are (a) Braud in combination with one of Dort, Ashton, the John Deere 34, the IH 40, or the Argentine patent, the secondary references being alleged to provide a teaching of "cantilever" mounting; (b) the John Deere 34 in combination with either the Schwartz patent or Braud for a disclosure of a single drive shaft; and (c) Ashton in combination with any one of Braud, Schwartz, the Argentine patent, Jones, Andrews, or Thieman, the secondary art being utilized for their teaching of a single drive shaft.

dd. Other than pointing to isolated elements in individual items of prior art (for example, a drive gear in Schwartz, a single shaft in Jones, a clutch in Ariens, and cantilever mounting in Dort), and offering the generalized opinion that it would be obvious to one of ordinary skill in the art to incorporate elements of the secondary references into the primary references, IH's expert gave no testimony or any indication as to how the modifications could be made, nor did he give any testimony as to where in the various items of prior art he found any teaching or suggestion that they could be combined as asserted. The generalized, unsupported and unexplained conclusions of IH's expert as to the obviousness of such combinations are insufficient to carry the burden of clear and convincing proof on the issue of validity.

ee. Both the primary and secondary references fail to show many of the claimed elements, and even if isolated elements identified by IH's expert in the secondary art could somehow be integrated into the teachings of the primary references, the resulting combinations (assuming their operability) would still not contain all the elements of these claims.

ff. The inventors recognized that various elements of the prior art were capable of combination in a workable machine, and nothing in the prior art taught such a capability. In addition, however, the combination led to dramatic reductions in complexity, weight, size, cost, and maintenance while facilitating row spacing adjustment and improving performance and reliability, even though the making of the invention was in conflict with the concept of the industry at the time.

gg. The elements of the combination worked together in new relationships from which the mentioned results depend. Moreover, the manner in which the elements work together is complex. For example, by eliminating under-frame braces and struts, the cantilevering of the row units from their gear housing permits both shorter row unit frames and reduction of the angle of row unit frame relative to the ground for a low profile while still maintaining adequate under-frame clearance for the stripped corn stalks and other "trash" which would otherwise tend to accumulate and thereby clog the corn head. A shorter row unit frame, in turn, results in reduction of both weight and cost of the row units. It follows that the lower weight enhanced the feasibility of cantilevering the row units in the first place.

hh. The record here shows the relationships and interdependencies of the elements and results to be clearly not obvious to persons highly skilled in the art, and fails to show that the various elements of the prior art could be combined to produce the results obtained.

ii. IH's suggested modification of Braud, in view of certain secondary references to meet the elements of claim 9, is particularly inappropriate because that modification is incompatible with the express teachings of Braud. Specifically, IH's expert testified that it would be obvious to "cantilever" the Braud row units in view of certain secondary references. The court finds that such reconstruction, even if it were physically possible, would destroy an important attribute of the Braud corn head.

To "cantilever" the Braud row units from their gear cases would require rigidly fixing the gear cases to the front edge of the transverse auger trough so as to eliminate the braces, struts, and the horizontal beam supporting the row units from underneath. That modification would necessarily eliminate the row unit pivot feature of Braud and result in a monolithic assembly comprising the row units, auger trough, and feeder housing. The assembly would have to be pivoted at the connection of the feeder housing to the combine. But this would destroy the cardinal feature taught by Braud. That feature, shown in Braud British patent 989,114, is the placement of the pivot axis along the row unit drive shaft in order to minimize the mass of the structure that must be raised. IH's proposed modification of Braud would necessarily move the pivot axis rearwardly, thereby increasing the mass to be raised and lowered, directly contrary to Braud's patented concept. Because cantilevering the Braud row units would contradict the teaching of Braud, claim 9 could not be rendered obvious thereby. Braud's teaching tends to lead away from the claimed invention rather than toward it.

jj. Deere's expert testified that he found nothing in the secondary references which would tell a person of ordinary skill in the art of corn harvesting equipment how to modify the structure of the primary references in light of the secondary references; that it would not be possible for a person of ordinary skill in the art to physically take any of the elements shown in the secondary references and use the element or elements in the structure shown in the primary references without a substantial modification; and that it would not have been obvious to a person of ordinary skill in the art at the time the invention was made to combine the teachings of the primary and secondary references to achieve the invention claimed in the patent.

kk. Based on the court's review and comparison of the prior art, and on the extensive testimony by the experts for both parties and other technical witnesses, the court finds that, while elements of the claimed combination may be found individually in the prior art, the making of the claimed combination would not have been obvious to one with ordinary skill in the art at the time the invention was made. Indeed, the record establishes that the claimed invention was not obvious to IH's highly skilled corn harvester engineers even long *after* the invention was made.

*ll.* The evidentiary record contains further positive evidence that the combination claimed would not have been obvious to persons reasonably skilled in the art at the time when the invention was made. The production corn heads then in use, as exemplified by Deere and IH products, were high profile, multidrive units which required, and employed, support means interposed below the gathering structure. The excess weight, difficulty of row-width adjustment, and the tendency to clogging were among the problems and shortcomings which were recognized to exist. In about 1967, IH inaugurated a program for the development of a new design to supplant its then production series, and to overcome the recognized problems and limitations of existing technology. In January, 1969, IH held a "brainstorming" session of its principal corn harvester engineers to discuss the known problems and to attempt to establish specifications for a new design. That meeting led only to a consensus that the problem could not be solved by a modification of existing IH designs, and that it would require redesign from the ground up if the goal was to be achieved. Through the ensuing year, continuing efforts by IH had achieved nothing of substance until IH's technical personnel became acquainted with the design features of the Deere D 40, which embodied the preferred embodiment of the claims in suit. The IH 800 design was drawn within a short period of time after the exposure of such technical personnel to the details of the D 40 design. The articulated impressions of IH's chief engineer and its most experienced corn harvester engineer of the D 40 design fortify the finding that the patented combination would not have been obvious within the intendment of the stat-

ute. The D 40 design was characterized by them as being a "new and rather radical" design and as being a "hell of a good design." Those reactions suggest that those persons, who certainly were skilled in the art, recognized the patented design as being a substantial and significant departure from the teachings of the prior art.

mm. The uncited prior art, upon which IH relies, is the equivalent of, and no better than, the prior art references which were considered by the Patent Examiner at the time when the patent issued. IH has not sustained its burden of proving the defense of obviousness. The combination claimed in the patent would not have been obvious to persons having ordinary skill in the art at the time when the invention was made. The evidence as a whole compels a finding and conclusion that the asserted claims of the patent are valid.

nn. All findings of fact stated in the court's original decision, 460 F.Supp. 523, are reaffirmed, except to such extent as the same are supplemented by the findings of fact herein announced.

IT IS ORDERED, therefore, that judgment shall enter for Deere against IH:

A. Holding asserted claims 1 through 10, inclusive, 14 and 17, to be valid, and holding that claims 1 through 3, inclusive, and 6 through 9, inclusive, are infringed by the accused IH 800 corn head.

B. Permanently enjoining IH from manufacturing, using or selling any product embodying the invention claimed in the patent.

C. For its provable damages for prior infringement, including interest and costs, which said provable damages are trebled.

D. For its reasonable attorneys' fees and its costs of suit.

IT IS FURTHER ORDERED that the cause shall remain pending for subsequent determination of any issues as to the amount of damages and the amount of Deere's reasonable attorneys' fees.