David R. BLAKE, an individual, and Ever-Level Glides, Inc., a corporation, Plaintiffs-Appellees (Cross-Appellants),

v.

The BASSICK COMPANY, a corporation, and Stewart-Warner Corp., a corporation, Defendants-Appellants (Cross-Appellees).

STEWART–WARNER CORP., a corporation, Plaintiff-Appellee,

v.

AMERICAN SEATING COMPANY, a corporation, Defendant-Appellant.

Nos. 16213–16215.

United States Court of Appeals Seventh Circuit.

Feb. 26, 1968.

**880**

See also, D.C., 245 F.Supp. 635.

Augustus G. Douvas, Dugald S. Mc-Dougall, Theodore R. Scott, Chicago, Ill., for Bassick Co. and Stewart-Warner Corp.

John D. Dewey, John L. Alex, Chicago, Ill., for Blake, Ever-Level Glides & American Seating Co.

Before KILEY, SWYGERT and FAIRCHILD, Circuit Judges.

---

KILEY, Circuit Judge.

Plaintiffs Blake and Ever-Level Glides, Inc. (Ever-Level) sued defendant, The Bassick Company (Bassick), for infringement of the Blake patent No. 2,-704,663, and Stewart-Warner Corporation joined as a co-defendant. Bassick and Stewart-Warner then sued American Seating Company (American) and filed a counterclaim against Blake and Ever-Level, charging in both proceedings infringement of Stewart-Warner's Wasdell patent No. 2,503,143. The several proceedings were consolidated for trial and the trial resulted in judgment of validity and infringement in favor of Blake and Ever-Level against Bassick and Stewart-Warner,[1] and judgments of invalidity and non-infringement against Bassick and Stewart-Warner in their suit against American and on their counterclaim against Blake and Ever-Level.[2] Three separate appeals are taken from the proceedings below. We affirm in each appeal.

Both the Blake patent and the accused Stewart-Warner device are levelers designed to be attached to the legs of tables and chairs to prevent them from wobbling on uneven floors. The Blake patent works by means of a piston contained in a metal cup covered by a plate with a hole in it. A rod extends from the piston through the hole in the plate, and is attached to the furniture leg. The piston rests inside the metal cup which is filled with a substance called "bouncing putty." Bouncing putty is a plastic like substance which does not contract when subjected to sudden pressure but will slowly flow around the piston when the piston is subjected to a steady pressure and therefore will cause the piston to lower. A spring is attached to the bottom of the metal cup in order to force extension of the bottom of the cup into contact with a low spot in the floor. The rising and lowering of the piston due to the flow

---

1. The court referred to a Master the question of the amount of damages suffered by Blake and Ever-Level.

2. We will refer in this opinion to Bassick and Stewart-Warner as "Stewart-Warner," since joint briefs are filed in their behalf. We will refer to Blake and Ever-Level as "Blake," for the same reason.

of the putty automatically adjusts the length of the furniture leg so as to keep all four legs in contact with the floor and prevent wobbling.

The accused Stewart-Warner device works in essentially the same way except that instead of bouncing putty, Stewart-Warner uses unvulcanized silicone rubber, and instead of an inside spring reaching between the piston and the bottom of the metal cup, Stewart-Warner uses an exterior spring reaching from the top of the metal cup to table leg attachment means.

The Wasdell patent relied on by Stewart-Warner in its counterclaim is an automotive shock absorber which uses a piston cylinder and an unvulcanized elastomer as a means to cushion shock.

## No. 16213

In appeal No. 16213 Stewart-Warner seeks to reverse the trial court's decision that the Blake patent is valid and is infringed by the defendant's device. The Blake cross-appeal seeks attorneys' fees incurred in defending against the counter-claim asserted by Stewart-Warner for infringement of the Wasdell patent, and treble damages for the infringement by Stewart-Warner of the Blake leveler. Blake asserts that the counterclaim was brought in bad faith and that the infringement of the Blake patent was willful.

*Validity*

Blake filed an application in England on April 26, 1948, for a patent covering his invention. This was about three months before he filed his application with the United States Patent Office, July 24, 1948,[3] and consequently to escape invalidity under 35 U.S.C. Sec. 186, Blake needed a "license * * * granted

retroactively" for inadvertence under Sec. 184.[4] A retroactive license was issued to Blake by the Patent Office. Stewart-Warner moved for summary judgment of invalidity under Sec. 186 on the ground that the retroactive license was obtained by misrepresentations to the Patent Office. It contends the court's denial of the motion was error.

The Sec. 186 point was originally raised in the Stewart-Warner answer to plaintiff's complaint. Blake at that time had not obtained a license, but after Stewart-Warner raised the point Blake filed an application for the retroactive license. The application stated that Blake had prepared the British patent application without the aid of a lawyer and was not aware of the license requirement. The license was initially denied because the affidavit filed with the license application did not explain why Blake did not know of the Sec. 184 license requirement since notice of the requirement appeared on the July 1946 and 1948 patent application receipts which Blake had presumably received. Blake filed a second affidavit which satisfied the Patent Office that neither receipt had been given to him by the attorney who had prepared the applications. The retroactive license then issued.

Stewart-Warner argues that Blake made false statements to the Patent Office in the license affidavit. It contends this is shown by different versions of the British filing given by Blake in his pretrial deposition, in his license application, and in his trial testimony. Stewart-Warner insists that Blake falsely represented to the Patent Office that his attorney did not know of or prepare the British application, and that had this been known, the retroactive license would not have issued.

3. Blake's original application for a patent filed in 1946 was abandoned after the July, 1948, application was filed.

4. Except when authorized by a license obtained from the Commissioner a person shall not file or cause or authorize to be filed in any foreign country prior to six months after filing in the United States

an application for patent * * * in respect of an invention made in this country. * * * The license may be granted retroactively where an application has been inadvertently filed abroad and the application does not disclose an invention within the scope of section 181 of this title."

Stewart-Warner argues that Blake stated at a pre-trial deposition that Blake's attorney had prepared the British application and that this establishes that his contrary statements in his license affidavit were false. Stewart-Warner also points out that Blake showed some uncertainty in his testimony at trial, although he told essentially the same story there as he had in his affidavit.

At trial Blake was cross-examined with respect to the inconsistencies between his earlier deposition and his license affidavit. The district court found that the retroactive license was "duly and legally" obtained. The court accepted Blake's story that he lacked knowledge of Sec. 184, that he prepared the *provisional specification* for the British application himself and that he hired a United States engineer to complete the specification; that his United States attorney did not know of the British patent when filing the 1948 patent application and he probably assumed that the British patent application was based on a disclosure in the 1946 Blake application, and that Blake did not receive the receipts, for the 1946 and 1948 applications, containing notice of the Sec. 184 provision. This question was briefed in the district court, and we see no reason to upset the district court's conclusion that the retroactive license was valid.[5]

Stewart-Warner also argues that Blake's patent is void by reason of a transaction between Blake and Rhodes, an engineer, in 1946, which it is claimed constituted a public use more than one year prior to the filing of Blake's patent application.

The court found that Rhodes' use of the patented device was experimental and not a sale. There is ample support for the finding. It is clear that the shipping to Rhodes of a single set of levelers had a double purpose, to establish the use of the trademark Levelmatic by shipping the devices in a box labeled with that name from Michigan to Pennsylvania; and for Rhodes, Blake's friend and adviser, to keep the device so that Blake could consult him about problems connected with preparing it for public use and commercial sales. There is no room for an inference that any demonstration by Rhodes "for people who came into his office" was other than experimental or that the mere shipment was a sale. Blake testified the device was not ready for sale until August, 1947, when commercial sales were first authorized by him.

The district court could not reasonably have thought that the Rhodes demonstrations were a covert commercial exploitation or that Blake's motive in the transaction was to exploit the invention to gain an advantage over competitors, under rules announced in Koehring Co. v. National Automatic Tool Co., 362 F.2d 100 (7th Cir. 1966). The facts here justify the conclusion that defendants did not establish this defense. Devex Corp. v. General Motors Corp., 321 F.2d 234, 239 (7th Cir. 1963).

*Infringement*

Stewart-Warner also argues that the trial judge's finding of infringement is clearly erroneous. We agree that the Blake claims do not read directly on the accused device. The spring in the Stewart-Warner device is external to the "dash pot" or container, while the spring in the Blake device is "between the bottom of the cylinder and the piston." The finding that the language of claims 1 and 2 of the Blake patent read directly on the Stewart-Warner spring is therefore clearly erroneous.

---

5. We are not persuaded that the excerpts in parallel claims from the provisional British application and the United States application in 1948 displayed in Stewart-Warner's reply brief show that Blake's sworn statements to the Patent Office and his testimony are "unbelievable fabrications." Blake testified that he prepared the provisional British application, and his attorney helped him prepare the United States application. The latter, in general, has a more professional like appearance with number references, presumably to figures, in specifications. The provisional has no reference to numbers and is phrased less concisely. This appears to be consistent with the Blake explanation.

However, we do not consider clearly erroneous the court's finding that the accused device is the equivalent of the Blake device. The spring in the Stewart-Warner device is clearly the equivalent of the spring in Blake, despite the difference in its position. The district court concluded that the filler used in the accused device is the equivalent of the bouncing putty revealed in the Blake claims. If this finding was justified, the finding of infringement was proper, because assuming the filler is substantially the same, plainly the accused device operates substantially the same way, and achieves substantially the same result by use of substantially the same means as does the patented device. Hunt v. Armour & Co., 7 Cir., 185 F.2d 722, 728.

The essential properties of bouncing putty which enable it to fulfill its function in the Blake device are those of resisting a sudden force and of deforming slowly to permit the movement of the piston under application of a steady force. These properties allow the device to adjust to an uneven floor by gradually extending the leg of the table to reach an uneven surface, while not reacting to sudden pressures.

Stewart-Warner argues that its filler does not have the solid and liquid properties of Blake's bouncing putty, and that for this reason there can be no equivalency. Blake's expert's, and we think even Stewart-Warner's expert's, testimony is to the contrary. Both substances have the same vital properties which permit their use in leveling devices. We think the entire evidence amply supports the finding of equivalency. Graver Tank v. Linde Air Prod. Co., 339 U.S. 605, 607, 70 S.Ct. 854, 94 L.Ed. 1097.

We see no merit in the contention that file wrapper estoppel precludes application of the doctrine of equivalents. Blake's original patent application called for the use of argano-siloxane but this application was rejected as unpatentable over prior art. He amended his claims to call for "a mass of bouncing putty," the only filler that would work in his device. His application on which the claim in suit issued stated that "it may be that other substances exist or may be discovered that have some or enough of the properties of the particular bouncing putty described to be used in its place." The court found that the Stewart-Warner filler was unavailable until 1952. It has the necessary properties for use in Blake's leveler and Blake is therefore not estopped from asserting its equivalency.

### Nos. 16214 and 16215

■ Blake cross-appealed, No. 16215, from the judgment below in so far as it concluded that Stewart-Warner's infringement was not willful, and that the Stewart-Warner counter-claim was not vexatious. Blake sought treble damages for willful infringement and allowance of reasonable attorneys' fees for defending against the "vexatious" counter-claim for infringement of the Wasdell patent. American's appeal, No. 16214, is grounded on the same claims of error, and the Blake and American briefs are consolidated on these points.

The district court's written decision on the merits contains 253 findings of fact and 33 conclusions of law. The district court originally found that the Stewart-Warner actions were brought in bad faith and the infringement of the Blake patent was willful. Subsequently the court on motion of Stewart-Warner eliminated those findings, stating that it had not intended to find willful and wanton infringement or to award treble damages and attorneys' fees.

■ The awarding of treble damages for willful and wanton infringement and reasonable attorneys' fees lay within the district court's discretion, Union Carbide v. Graver Tank, 7 Cir., 282 F.2d 653, 673, and is vulnerable only to a charge of abuse of that discretion. In our opinion, Blake and American have not carried their burden of persuasion in this court. We have agreed with Stewart-Warner that their device did not read directly upon the Blake claims. We cannot agree with Blake, therefore, that Stewart-Warner copied the Blake device. Neither can we say that the court should have decided

differently in light of the evidence of Stewart-Warner's original interest in a Blake license, its decision to develop its own device, its instructions to engineers to avoid infringing Blake's invention, and its proceeding with marketing of its device on the advice of counsel that it did not infringe the Blake patent.

Blake and American argue that the district court should have allowed attorneys' fees because of Stewart-Warner's "vexatious" counterclaim and suit for infringement of the Wasdell patent. While this contention is arguable, we do not believe that the district court abused its discretion in refusing to award the amount of the fees to Blake. In the Patent Office file and in the testimony below there are many references to the Blake device as a shock absorber or having the capacity to absorb or avoid shock, and Blake himself testified that "to a degree" he would call his device a shock absorber. Although the district court found several reasons for deciding that the Blake device did not infringe the Wasdell patent, the court expressly stated he had no intention of awarding attorneys' fees.

For the reasons given, the judgments are affirmed.

SWYGERT, Circuit Judge (dissenting).

I dissent from that portion of the majority opinion that denies the plaintiffs David R. Blake and Ever-Level Glides, Inc. and the defendant American Seating Company attorney fees for the vexatious and bad faith charge of infringement of the Wasdell patent advanced by Stewart-Warner.

The action by the plaintiffs for infringement of the Blake patent was filed on March 26, 1962. On June 13, 1962 Bassick answered the complaint. The Wasdell patent was purchased by Stewart-Warner on September 21, 1962. Two months after the purchase of the Wasdell patent, Bassick and Stewart-Warner filed a complaint and counterclaim alleging that the Wasdell patent, an invention directed to automotive shock absorbers, was infringed by the furniture levelers ("shock absorbing devices") of Blake, Ever-Level, and American Seating.

After first agreeing to adopt the findings and conclusions of Blake, Ever-Level, and American Seating that the charge of infringement based on the Wasdell patent was brought in bad faith and that an award of attorneys' fees was in order, the district judge subsequently amended his decision saying that he had "no intention * * * to award * * * attorneys' fees, and the adoption of the plaintiffs' findings in respect thereto was inadvertent." In my opinion, this action was erroneous and an abuse of discretion.

Despite his change of position, the district judge made the following relevant findings pointing to the many differences between the Wasdell shock absorber and the Blake leveler:

An automotive shock absorber has always functioned and does modernly function to limit or "snub" rebound in the automobile chassis springs. The movable piston [of a shock absorber] is intended to be operated in opposite directions during a compression stroke and an expansion stroke with the filling medium in the shock absorber offering minimum resistance to the piston during the compression stroke and maximum resistance to the piston during the expansion stroke for the purpose of snubbing rebound in the automobile chassis springs. As a prerequisite to any proper functioning of the shock absorbers of Wasdell it is essential that the pistons be capable at all times to move in both directions within the cylinder and that the devices are not "bottomed out" in order to remain functional. The [furniture] levelers in question including the Bassick leveler are quite slow in operation requiring minutes rather than seconds to respond to forces applied to the levelers. The accused * * * leveler[s] is [are] intended to be fully compressed or "bottomed out" at least at one time or another during their operational use and within their specified ranges of operation while still remaining fully functional and operable to carry out its

[their] intended purpose. The SS–91 filling material used by counter-defendants cannot be successfully used in the shock absorber devices of Wasdell. By reason of the property of the SE-IOOU, an unvulcanized elastomer, of resisting a suddenly applied force, such material will not function properly in a shock absorber of the Wasdell type.

The levelers of counter-defendants do not meet the requirement of claim 1 of the Wasdell patent to the effect that the chambers and means of communication in such levelers are completely filled by the filling material. Wasdell directs his invention solely to shock absorbers for vehicular use and neither suggests use of any of the disclosed forms of shock absorbers as a self-adjusting leveler nor suggests the modifications necessary to the disclosed shock absorbers to convert the same for functioning as self-adjusting furniture levelers. The accused * * * levelers are not shock absorbers.

In addition to these findings of substantial dissimilarity, there was a complete failure by Stewart-Warner to make any serious attempt to read the Wasdell patent on the accused levelers of the plaintiffs and defendant. Stewart-Warner and its subsidiary Bassick in effect admitted their insincere efforts to equate the levelers manufactured in conformity with the Blake patent and the teachings of the Wasdell patent by the following statement in their brief:

> The counterclaim and suit for infringement of the Wasdell patent were, of course, filed for the purpose of protecting Bassick and Stewart-Warner against the possibility that the District Court would hold bouncing putty and unvulcanized silicone rubber to be equivalent materials, despite their great differences. While Bassick and Stewart-Warner did not consider that the materials were in fact equivalent, they felt that if the Court should hold them to be equivalent, they should be entitled to rely on such a holding for the purpose of interpreting the claims of the Wasdell patent, to the same ex-

tent the Blake group could take advantage of such a holding in applying the claims of the Blake patent.

Moreover, counsel for Stewart-Warner and Bassick candidly admitted throughout the trial that the Wasdell patent was not infringed.

Stewart-Warner's "hedge," first in purchasing a patent concededly nonanalogous to the patent in controversy after being charged with infringement and thereafter in launching a counter-offensive based on this belatedly acquired patent, was obviously vexatious and done solely to harass the opposing parties. A ploy of this kind ought to be discouraged by exacting a penalty—the award of attorneys' fees in defending an admittedly frivolous counter-action.

Consequently, I believe that Stewart-Warner's counterclaim and complaint based on alleged infringement of the Wasdell patent should have been characterized as "exceptional" cases under 35 U.S.C. § 285, allowing "reasonable attorney fees to the prevailing party."