**DEERE & COMPANY, Plaintiff-Appellee,**

v.

**INTERNATIONAL HARVESTER COMPANY,
Defendant-Appellant.**

**No. 80–2208.**

United States Court of Appeals,
Seventh Circuit.

Argued April 27, 1981.

Decided July 29, 1981.

Certiorari Denied Nov. 2, 1981.
See 102 S.Ct. 514.

Howard W. Clement, Chicago, Ill., for defendant-appellant.

Virgil Bozeman, John V. Patton, Bozeman, Neighbour, Patton & Noe, Moline, Ill., Robert H. Fraser, Louis A. Mok, Fraser and Bogucki, Los Angeles, H. Vincent Harsha, Raymond L. Hollister, Moline, Ill., Dugald S. McDougall, McDougall, Hersh & Scott, Chicago, Ill., for plaintiff-appellee.

Before SPRECHER and WOOD, Circuit Judges, and CAMPBELL,* Senior District Judge.

HARLINGTON WOOD, Jr., Circuit Judge.

This suit for patent infringement was instituted by Deere & Company (Deere) in April, 1976, as a result of the commercial introduction by International Harvester Company (IH) of its IH 800 series corn head. Deere alleged that IH infringed its Patent No. 3,589,110 (110 Patent) issued on June 29, 1971 to Dale Schreiner and Joseph J. Shindelar and assigned to Deere.[1] The 110 Patent is embodied in the Deere 40 series corn head and concerns the mounting and provision of power to devices used in harvesting corn.

International Harvester counterclaimed that the 110 Patent was invalid and a four day bench trial followed. On October 19, 1978 the district court entered judgment for Deere,[2] finding claims 1–3 and 6–9 of the 110 Patent valid and infringed.[3] Accordingly, IH was ordered to cease its production of the IH 800 and to pay treble damages and attorney's fees to Deere.

On appeal, this court reversed the judgment of the district court[4] on the basis that the trial court had not applied the requisite standards for the determination of obviousness set forth in *Graham v. John Deere Co.,* 383 U.S. 1, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966). The district court was admonished to "articulate more adequately its rationale

..." for its finding that the prior art relied on by IH was the equivalent of, or no better than, the prior art references that were before the patent office. This case was remanded with instructions to make detailed findings of the following:

1. The state of the prior art with references to each of the several old elements that were combined to constitute the invention claimed in the Deere patent.

2. With respect to each of those elements, a comparison of the "equivalent" prior art cited to the Examiner with prior art not cited.

3. The level of skill in the art.

4. The reasons why the evidence shows the patented combination of the above elements would not have been obvious to one skilled in the art.

Prior to this order of the court of appeals, International Harvester commenced a suit asking for a declaratory judgment that a new corn head it planned to market commercially, the CX–41, did not infringe the 110 Patent. The district court held that there was no infringement, 478 F.Supp. 411, but on appeal, this court vacated the order of the district court for lack of subject matter jurisdiction. 623 F.2d 1207. Upon remand in this case (but before the court of appeals decision in the declaratory judgment action), IH sought to reopen the trial proceedings to admit new evidence, primarily comprised of testimony given during the declaratory judgment trial. Petitioned by IH to require the trial court to do so, the court of appeals simply noted that on remand "nothing ... prohibits the district court from hearing new evidence if it is so inclined." The district court did not allow new evidence, but issued "Supplemental Findings and Orders" to more fully explain its original conclusions. 496 F.Supp. 397.

---

* The Honorable William J. Campbell, Senior District Judge of the Northern District of Illinois, is sitting by designation.

1. The original suit also alleged infringement of Patent No. 3,609,948, hereafter the "Jones Patent," but this claim was later dropped.

2. 460 F.Supp. 523 (S.D.Ill.1978)

3. The court held that claims 4, 5, 10, 14 and 17 were valid but not infringed.

4. *Deere & Co. v. International Harvester Co.,* 618 F.2d 110 (7th Cir. 1980).

We are now called upon to assess the correctness of those findings of fact and conclusions of law. More specifically, IH contends that the court misinterpreted the applicable law in holding the 110 Patent infringed. In addition, IH argues that a holding of infringement would require that the patent be found invalid. In arguing for invalidity, IH insists that the district court erred in not reopening the trial for new evidence after remand. Finally, IH challenges the conclusion that it wilfully and wantonly infringed the 110 Patent and consequently seeks the elimination of the award of treble damages, attorney's fees and costs.

### THE PATENT

The patent at issue involves a device commonly attached to a combine for use in harvesting corn. In order to facilitate picking corn, a number of units called corn heads are attached to a supporting structure at intervals which correspond to the spacing of the rows of corn. The invention of the 110 Patent has to do with the mounting of the units onto the supporting structure and the provision of power to the units.

The harvester units project forward from the combine and consist of gathering chains which guide the corn stalks into a passage between the deck plates. There, the ears are snapped off and moved by gathering chains into a trough and then into the combine for husking and shelling. The stalks are pulled down through the plates and out, remaining in the field.

The 110 Patent calls for each harvesting unit to be mounted on its own enclosed gear housing. The gear train within the housing is the only mechanism used to drive the harvesting unit. The gear housings are mounted on a support beam and held by a mechanism that opens so that the housings may be repositioned along the beam if necessary to adjust the spacing. One drive shaft runs through all gear housings and provides power to them from the combine.

That drive shaft is circumscribed by one main gear in each housing that is connected to the shaft by a clutch.

Deere's embodiment of the patent, the Deere 40 corn head, shows a drive shaft made in one piece. Thus, after releasing the holding mechanism, the space between row units may be adjusted by sliding the gear housing along the support beam, the drive shaft remaining intact and passing through it as the housing is moved. International Harvester's 800 series also shows a single drive shaft which spans the length of the harvester, but is segmented and rejoined by couplers so that when adjustment of spacing is necessary and the gear housings are moved along the beam, pieces corresponding to the new space between the housings must be inserted in place of the previously used segments. In all other respects, the IH 800 corn head functions the same way as the Deere 40.

At trial, Deere contended that International Harvester's IH 800 corn head infringed all claims of the 110 Patent. International Harvester defended this charge by showing that on advice of counsel and specifically to avoid infringement, IH adopted the segmented drive shaft that had been used on previous models. Arguing that this difference was sufficient to avoid infringement, IH maintained that the "invention" of the patent is in its "self-contained adjustability" and that since the IH 800 cannot be adjusted without the use of additional parts, it does not infringe.

The difficulty the district court found with this argument is that the claims specified by the patent (and at issue here) do not speak of "self-contained adjustability."[5] In finding claims 1–3 and 6–9 infringed, the court explained that they contain no limitation of the shaft to a unitary whole. Further, the district court rejected the notion that the patent examiner's characterization of claims 1–18 in a communication to Deere requires such a limitation to be read into all claims. The communication grouped to-

---

**5.** None of the claims specifically use the language "self-contained adjustability" but the district court found that the concept is a limitation of claims not infringed.

gether the first eighteen claims as "drawn to a plural unit corn harvesting device, wherein the spacing between units may be varied, while maintaining the drive therefor . . . ." The district court dismissed the description as at best the preferred embodiment described in the specifications and also pointed out that the examiner did not require the limitation of the claims to the characterization.

On appeal, IH again poses this argument and adds a number of others in an effort to convince us to reverse the district court decision on infringement. Before we address them, it is important to note that our standard of review on the question of infringement is limited to a determination of whether or not the findings of the district court are clearly erroneous. Fed.R.Civ.P. 52(a); *Minnesota Mining and Manufacturing Co. v. Permacel-LePages, Inc.*, 334 F.2d 820, 822 (7th Cir. 1964). "If they find support in the evidence we are bound thereby and there remains but the question of whether the court applied the correct legal criteria in reaching the ultimate conclusion it did." *Wahl v. Carrier Manufacturing Co.*, 358 F.2d 1, 3 (7th Cir. 1966).

On this point, IH argues that this case falls within the scope of *Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation*, 402 U.S. 313, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971), where the Supreme Court said that in rare instances where the trial court "wholly failed to grasp the technical subject matter and issues . . ." the judgment will be open to question. *Id.* at 333, 91 S.Ct. at 1445. Our review of the record and examination of the findings of the court below indicates that this is not such a case. In our review, then, we follow the dictates of *Graver Tank & Manufacturing Co. v. Linde Air Products Co.*, 339 U.S. 605, 70 S.Ct. 854, 94 L.Ed. 1097 (1950), and defer to the trial court's more immediate and complete evaluation of the evidence so long as it is adequately supported by the record and not clearly erroneous.[6] *Id.* at 611–12, 70 S.Ct. at 857–858.

---

6. *See also Chicago Rawhide Manufacturing Co. v. Crane Packing Co.*, 523 F.2d 452 (7th Cir. 1975).

## INFRINGEMENT

International Harvester's first argument, which it contends was misunderstood by the trial court, is that since the claims call for both a drive shaft and moveable gear housings, they *cannot* be read as allowing for the addition of parts. Instead, IH insists, the gear housing required by the 110 Patent must be able to move with the drive shaft in place. Appellant complains that the district court looked only at whether a single unitary drive shaft was required by the claims. We think this approach was necessary to resolve the question of whether the IH 800 infringes. Reading the claims, one finds that a "main rotatable horizontal drive shaft" is required by the claims. In addition, there is a requirement that the gear housing be attached to the beam so that it is moveable. The district court resolved the question of infringement by scrutinizing IH's harvester to see if it contained both elements. Clearly, the gear housing could be moved along the beam; the question to be answered was whether any of the language describing the drive shaft would limit it in such a way as to exclude the embodiment IH chose. Thus, it had to be determined if a single, unitary piece was required by the claims. The district court found that it was not; so long as in some way both features are accomplished, the IH 800 infringes. Thus, the simple answer to IH's contentions is that in the IH 800, the gear housing is moveable and there is but one drive shaft; since there is no limitation in the 110 Patent requiring moveability to be accomplished with no additional parts, the IH 800 infringes. These are simply two different embodiments of the patented device.

It is ironic that IH urges us to note that the claims do *not* say that the drive shaft may be modified to permit adjustment when the same principle proves their argument false. The claims also do not say that

the drive shaft may not be modified to permit adjustment, but is required to be one piece. The claims are not limited to either configuration and this is precisely the point.

For this reason, IH's reliance on the teachings of *Edwards v. Hychex Products*, 171 F.2d 259 (7th Cir. 1948), and *Deepsouth Packing Co. v. Laitram Corp.*, 406 U.S. 518, 92 S.Ct. 1700 (1972), is of no consequence. Both cases require that in a combination patent, all elements of a claim must be present for infringement. IH contends that by purposely omitting the feature of slideability along a unitary shaft, it avoids infringement. But this feature is *not* an element of the patent claims, it is only one way of creating the requisite drive shaft; the IH 800 features another. Thus, as required by *Edwards* and *Deepsouth*, all of the elements of the claims are present.

IH asks us to read the limitation of "self-contained adjustability" (a term which appears nowhere in the patent specifications, but which is asserted by IH to be the thrust of the invention) into the claims by virtue of the language contained in a letter from the patent office. The letter characterized all the patent claims as "drawn to a plural unit corn harvesting device, wherein the spacing between units may be varied, while maintaining the drive therefor...."

The answer to this contention lies in the basic canons of construction of patents: the patent is defined by the scope of the claims. *Aro Manufacturing Co. v. Convertible Top Replacement Co.*, 365 U.S. 336, 81 S.Ct. 599, 5 L.Ed.2d 592 (1960). Where claims are ambiguous, they may be construed in light of the specifications. *N. V. Maatschappij Voor Industriele Waarden v. A. O. Smith Corp.*, 590 F.2d 415, 421 (2d Cir. 1978). The amount of inquiry necessary outside the claims themselves will depend on the circumstances of each case. *Eutectic Corp. v. Metco, Inc.*, 579 F.2d 1, 5 (2d Cir.), cert. denied, 439 U.S. 867, 99 S.Ct. 192, 58 L.Ed.2d 177 (1968). Limitations cannot be read into claims from any source. The course of prosecution in the patent office may be instructive in cases where amend-

ments have been made eliminating or modifying claims that would have rendered the patent invalid. In such cases, the courts have looked to the "file wrapper" to determine if a patentee is estopped from asserting a claim as part of his patent. But this is not the fact in this case. Appellant is attempting to use a description of the general nature of all eighteen claims to characterize the ones held infringed. Its value is limited at best. Where some claims are broad and others narrow, the narrow claim limitations cannot be read into the broad whether to avoid invalidity or to escape infringement. *Dennison Manufacturing Co. v. Ben Clements & Sons, Inc.*, 467 F.Supp. 391 (S.D.N.Y.1979). So even if one of the eighteen claims is narrowly defined so as to preclude infringement, that limitation does not affect the remaining broader claims. We need not speculate if the patent office wished to limit all the claims to the stated language. It did not do so in the prosecution of the application. We cannot accept IH's interpretation that the letter mandated that all claims were so limited on their face.

International Harvester next asserts that Deere's admissions before the patent office with regard to its "Jones Patent" should control here because of the similarity in the patents. As the district court clearly stated, the proceedings in a different patent application have no bearing on our own. While it is true that a patentee cannot assert contradictory positions, using a restrictive interpretation to avoid invalidity and then an expansive one to assert infringement, *Devex Corp. v. Houdaille Industries, Inc.*, 382 F.2d 17 (7th Cir. 1967), that maxim is applicable only where the same patent is involved.

Nor does a subsequent description of the Deere 40 series corn head to the foreign patent office serve to limit the claims. The district court refused to admit such evidence as irrelevant since the statements post-dated the issuance of the patent. While there is some question as to the date of the letter vis-a-vis the issuance of the patent, the opinion relied on by the district

court is helpful in any event. *Ellipse Corp. v. Ford Motor Co.*, 452 F.2d 163 (7th Cir. 1971), *cert. denied*, 406 U.S. 948, 92 S.Ct. 2041, 32 L.Ed.2d 337 (1972), not only precludes reliance on subsequent events in interpreting patent claims, but adds that "[a] patentee's interpretation under a patent may never be used to add to a patent something that was not there at the time of issuance." *Id.* at 169. IH uses this statement to distinguish our situation, but we think it is analogous. IH wishes to use the language in the letter to add to the *claims* something that was not there. The inclusion of the proffered evidence could have no effect on the clear language of the claims.

Finally, IH argues that the IH 800 does not fall within the scope of the doctrine of equivalents since it achieves adjustability in a way different from that of the 110 Patent. IH cites the following language from *Flowers v. Austin-Western Co.*, 149 F.2d 955 (7th Cir. 1945), to support its contention:

> [M]ere application of claim phraseology or a word by word correspondence is not alone enough to establish infringement, *Grubman Engineering & Mfg. Co. v. Goldberger*, 2 Cir., 47 F.2d 151, nor is similarity of result. *Cimiotti Unhairing Co. v. American Fur Refining Co.*, 198 U.S. 399, 25 S.Ct. 697, 49 L.Ed. 1100. There must be real identity of means, operation, and result, *Weil Pump Co. v. Chicago Pump Co.*, 7 Cir., 74 F.2d 13, and if one produces the same results in a different way he does not infringe. *Flowers v. Magor Car Corp.*, 3 Cir., 65 F.2d 657.

*Id.* at 958. First, it is necessary to note that it is the claim and not the preferred embodiment which is to be used for comparison. IH admits that its harvester "may achieve the same general result (i. e., row adjustability) ..." but argues that it does not have the "self-contained adjustability" required by the 110 Patent. However, the claims do not require anything more than the ability to move the gear housings along the beam and that there be a single horizontal drive shaft. The function of the drive shaft is identical in both: it brings power

from the combine to the main drive gear for each row unit. In operation, function and results, the IH 800 and the 110 Patent are the same. The IH 800 is different only from the preferred embodiment of the 110 Patent, not from the invention patented.

To be sure, patents are not limited to the structure described for the invention may be embodied in various forms. Furthermore, except where form is of the essence of the invention, one device is an infringement of another if it performs substantially the same function in substantially the same way to obtain the same result, so that if two devices do the same work, in substantially the same way, and accomplish substantially the same result, they are the same, even though they differ in name, form or shape, and when one has achieved something new involving invention, it is infringed when some one does the same thing in substantially the same way and thereby produces the same result. ...

*Id.*

██ The basis for all of International Harvester's infringement arguments is that the limitation of the preferred embodiment should be read into 110 Patent claims 1–3 and 6–9. The district court, looking at the language of the claims, refused to do so. After reviewing all of the arguments posed by International Harvester, we cannot say that the district court's findings were clearly erroneous nor that the legal analyses were incorrect. IH did not avoid infringement by segmenting the drive shaft and rejoining the segments since in so doing it simply formed the same horizontal drive shaft required by the claims.

## VALIDITY

██ In holding the 110 Patent infringed by the IH 800, we necessarily hold that the patent does not require a single unitary drive shaft which remains in place as the gear housing is moved along the support beam to adjust row spacing. Nor does the patent require that the gear housing also slide along a stationary shaft. Internation-

al Harvester strongly argues that this feature, shown in the Deere 40 embodiment, is the only real invention in the patent; without it, the 110 Patent is invalid for obviousness.

The question of validity of the 110 Patent has been addressed by the district court in two separate orders. The first was found to be inadequate in that it did not clearly apply the factors enunciated in *Graham v. John Deere Co.*, 383 U.S. 1, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966). On remand, the district court accepted no new evidence but issued supplemental findings to comply with the order of this court. International Harvester asserts as error the district court's refusal to allow new evidence and insists that a new trial is required.

The district court found no reason to admit new evidence in that the directive of this court was addressed toward correcting the inadequate articulation of its conclusions. This court did not indicate that further evidence was necessary to comply with its order. In fact, when IH requested that this court direct the district court to entertain new evidence, the request was refused, this court stating only that nothing prohibited the trial judge from doing so "if it [was] so inclined." Thus, so long as the existing evidence was adequate to permit the district court to fully comply with the requisite legal analysis, there is no error in the refusal to admit further evidence.[7] *See Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 331–32, 91 S.Ct. 795, 802–03, 28 L.Ed.2d 77 (1971).

IH also objects that the supplemental findings and conclusions were adopted from those submitted by Deere. While we agree

that in such cases, closer scrutiny should be used to assess their correctness, we also note that in patent cases, submissions may be especially helpful because of the technical subject matter. *Reese v. Elkhart Welding & Boiler Works, Inc.*, 447 F.2d 517 (7th Cir. 1971). In any event, adoption of findings submitted by parties is within the discretion of the trial court, *id.*, and there was no abuse of discretion in using the language submitted to more clearly enunciate the reasoning of the court.

Section 103 of the Patent Act states that a patent may not be granted where "the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which the said subject matter pertains." 35 U.S.C. § 103. The Supreme Court outlined the proper course for the determination of obviousness in *Graham v. John Deere Co.*, 383 U.S. 1, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966):

> Under § 103, the scope and content of the prior art are to be determined; differences between the prior art and the claims at issue are to be ascertained; and the level of ordinary skill in the pertinent art resolved.

*Id.* at 17.

Appellant IH contends that the district court did not adequately comply with *Graham* in its supplemental order. IH makes two main arguments in this respect: (1) that the court failed to adhere to the language of the claims in comparing prior art and assessing the differences and (2) that better prior art was not considered by the

---

7. The "new evidence" IH wishes to have admitted concerns testimony given during a subsequent action brought by IH against Deere seeking a declaratory judgment that the CX–41 corn head it proposed to manufacture did not infringe the 110 Patent. IH argues that the testimony in the CX–41 case is inconsistent with that given at trial in the case before us. As such, IH seeks to use the testimony to discredit the position of Deere in the present case which was tried before the CX–41 case. It is true that one cannot assert a position at a subsequent proceeding which is contrary to

that asserted to protect the patent earlier. *Fife Manufacturing Co. v. Stanford Engineering Co.*, 299 F.2d 223, 226 (7th Cir. 1962). But all this means is that Deere's position in *this* suit must remain its position in any challenges that follow. Therefore, while testimony inconsistent with that given here might have been attacked in the CX–41 case, the opposite is not true: Deere's initial position may not be invalidated by subsequent testimony. Thus, the "new evidence," if admitted, could have had no effect on the decision.

patent office, thus negating the statutory presumption of validity.[8]

The thrust of the first argument is that by addressing the effects created by the combination of the elements, the district court added to the claims. However, our reading of the district court's findings shows that the court considered only the claimed elements in comparing the patent to prior art as required by *Graham*. The *effects* of the combinations—vertical compactness, lateral compactness, lower profile, smaller gears, etc.—were considered only as support for a finding of nonobviousness. It is not disputed that the 110 Patent is a "combination patent," that is, a patent that is made up of known elements. Our inquiry is not into whether the patentee has created any new element, but whether the combination of elements shown would have been obvious to one skilled in the art. Evidence of the unique effects of combining these elements simply adds to the understanding of the invention as compared to those that preceded it and is helpful in making the determination of obviousness or nonobviousness.[9]

The next argument focuses on the fact that in three instances, prior art was not considered by the patent examiner in the prosecution of the 110 Patent. IH argues that this negates the presumption of validity and also proves the obviousness of the 110 Patent. Our court has held that where significant prior art is not before the patent examiner in his determination of the validity of the patent, the presumption does not apply. *Republic Industries, Inc. v. Schlage Lock Co.*, 592 F.2d 963, 972 (7th Cir. 1979). However, where the prior art is equivalent to that already considered, the presumption is retained. *LaSalle Street Press, Inc. v. McCormick & Henderson, Inc.*, 445 F.2d 84, 93 (7th Cir. 1971). The district court considered the three patents and concluded that they were no better than the prior art

and therefore, the presumption remained. The supplemental findings explain that since all of the elements included in the patent were already before the patent examiner, additional patents which also show some, but not all, of these elements do not help the inquiry.

The position of the district court is understandable in light of the fact that patents showing each of the elements used in the creation of the 110 Patent were before the examiner. Taking the elements individually, the patents already before the patent office are as good as the three additional patents cited. However, the inquiry into obviousness requires us to determine how likely it is that one would combine all the elements. Thus, patents which show some of the elements in conjunction with others are relevant as indicators of the art leading toward the making of the combination. For this reason, we believe that the patents may not be fully equivalent to those before the examiner. The Braud publication combines the single drive shaft and enclosed gear housing; the combination of these two elements is not present in the cited patents. Dort (Patent No. 2,647,353) combines an enclosed gear housing with the concept of cantilevering the row units on the gear housing. In addition, the single main drive gear of the Schwartz Patent (No. 3,070,939) is closer to the 110 Patent than the Jones Patent's single sprocket input.[10]

However, the effect of finding these patents not equivalent to those before the patent office would not be as conclusive as International Harvester suggests. This court in *Chicago Rawhide Manufacturing Co. v. Crane Packing Co.*, 523 F.2d 452 (7th Cir. 1975), *cert. denied*, 423 U.S. 1091, 96 S.Ct. 887, 47 L.Ed.2d 103 (1976), addressed this issue at some length. Then Circuit Judge Stevens explained:

There are two aspects to the presumption of validity. First, as a matter of

---

8. 35 U.S.C. § 282 (1952).

9. *See* Markey, *Semantic Antics in Patent Cases*, 88 F.R.D. 103 (1981).

10. IH's argument that the Jones Patent cannot be considered as prior art because it was merely pending before the patent office is totally without merit. *See Hazeltine Research, Inc. v. Brenner*, 382 U.S. 252, 86 S.Ct. 335, 15 L.Ed.2d 204 (1965).

procedure, § 282 places the burden of persuasion on the party attacking the validity of the patent. This burden remains upon the alleged infringer throughout the proceeding and is in no sense dependent on the character of the proceedings before the Patent Office or the amount of prior art cited to, or considered by, the Patent Examiner. In its first aspect, the presumption is constant.

There is an additional aspect to the presumption which relates to the deference due to the technical expertise possessed by the Patent Office and not generally possessed by federal judges. Notwithstanding the ex parte character of the normal Patent Office prosecution, if it appears that the prior art which is cited to establish invalidity in a judicial proceeding had already been considered by the Patent Office, the burden of overcoming the presumption of validity then rests heavily on the person attacking the patent. He must make a "clear and cogent" showing in order to prevail.

The presumption, however, never becomes so strong that a patent is completely unassailable. A demonstration that the art considered by the Patent Office is the same as the art considered by the court strengthens the presumption in the sense that it provides the justification for the requirement that invalidity be established by clear and convincing evidence, but such a demonstration is not also a bootstrap that lifts the presumption to a still higher level.

The basis for the requirement that invalidity be established by clear and convincing evidence is largely, if not wholly, dissipated when pertinent prior art is shown not to have been considered by the Patent Office. For then the Examiner's expertise may have been applied to an incomplete set of data and there can be no certainty that he would have arrived at the same conclusion in the face of the evidence and argument present to the court.

*Id.* at 457–58 (footnotes omitted). Thus, the result of a determination that the patent office would have been better informed had the three additional patents been before it is only a decrease in the level of proof.

Viewing all the evidence before the trial court, we cannot say that International Harvester has reached even this lower standard. Even those patents which combine elements do not lead in an obvious way to the resulting invention. Although elements of the prior art appear in a variety of ways in farm machinery, this machine combined the elements in a way that solved many of the problems existing at the time. The invention is not merely a cumulative sum of the parts but an ingenious use of ideas in a way that makes the machine a significant advance over those previously used. *See Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Corp.*, 340 U.S. 147, 152–53, 71 S.Ct. 127, 130, 95 L.Ed. 162 (1950); *L.E. Sauer Machine Co., Inc. v. Corrugated Finishing Products, Inc.*, 642 F.2d 203 (7th Cir. 1981); *Skoog v. McCray Refrigerator Co.*, 211 F.2d 254 (7th Cir. 1954).

The invention completely enclosed the gear housing so that all drives were kept lubricated and free from clogging. The single drive shaft and single main drive gear permitted the size of the gears to be reduced. This in turn allowed the size and bulk of the housing to be decreased, making it narrower and lighter. Cantilevering the row units on their gear housings opened space below, eliminating the problem of trash collection on the support structure below. The entire space saving allowed for the addition of more row units, thus increasing the efficiency of the entire harvester.

In *Graham v. John Deere Co.*, the Supreme Court suggested that such things as commercial success, long felt but unsolved needs, and failure of others may be considered as indicia of obviousness or nonobviousness. 383 U.S. at 17–18, 86 S.Ct. at 693–694. This court has stated that such secondary considerations may "tip the

scales" in those cases.[11] *Republic*, 592 F.2d 963, 975–76; *Panduit Corp. v. Burndy Corp.*, 517 F.2d 535 (7th Cir.), *cert. denied*, 423 U.S. 987, 96 S.Ct. 395, 46 L.Ed.2d 304 (1975). The district court made findings, supported by the evidence, that as a result of the combination, maintenance problems inherent in the chain and sprocket drives were eliminated. In addition, there was evidence that IH, among others, quickly applied for a license to use the 110 Patent in the manufacture of their own corn harvesters. IH subsequently withdrew its application, but created the IH 800 which contained all of the elements of the patent and all but one of the elements of the Deere 40 corn head. It is difficult to believe IH's arguments insisting on the lack of advance of the patent as construed by Deere (that is, without slideability) when it seeks so fervently to market the same invention. Furthermore, IH's failure to produce a device satisfying the demands for increased efficiency and ease in operation indicates that Deere's solution was not obvious. *Chicago Rawhide*, 523 F.2d 452, 459.

We conclude that the solution to so many of the problems of earlier harvesters as embodied in the 110 Patent would not have been obvious to a hypothetical person skilled in the art having all the prior art before him. *Republic*, 592 F.2d 963, 975. Therefore, we affirm the judgment of the district court finding claims 1–3 and 6–9 of the 110 Patent valid.

### TREBLE DAMAGES AND ATTORNEY FEES

In addition to its holding of infringement and validity, the district court granted Deere's request for treble damages and attorney's fees on the basis of 35 U.S.C. §§ 284 and 285. These sections have been used to compensate the prevailing party for the inequitable conduct of his opponent and thus are applicable only in unusual cases.

*Apex Electric Manufacturing Co. v. Altorfer Bros. Co.*, 238 F.2d 867 (7th Cir. 1956). The district court based its award on the following facts: (1) after seeing the Deere 40 corn head on display, IH engineers made sketches which eventually led to the IH 800 harvester; (2) a prototype was submitted to IH patent counsel who concluded that it would infringe on the 110 Patent if it contained a unitary shaft, but would not if the shaft was segmented; (3) the latter form was adopted and initially promoted using a film which attested to its ability to be adjusted by simply sliding the row units. This film was recalled for corrections after several memoranda noted the problem, one of which stated that the passage in the film would be fatal to IH in winning this suit.

■ Section 284 allows the court to increase the damage award up to three times actual damages.[12] The language of the statute gives no guidance in its application, but the section has been interpreted by the courts to apply only in cases of bad faith where conscious and wilful infringement are found. *See, e.g., Union Carbide Corp. v. Graver Tank & Manufacturing Co.*, 282 F.2d 653, 660 (7th Cir. 1960), *cert. denied*, 365 U.S. 812, 81 S.Ct. 692, 5 L.Ed.2d 691 (1961). Thus, in cases where the issues are close and fairly debatable and are litigated in good faith, treble damages should not be awarded. *Wahl v. Carrier Manufacturing Co.*, 511 F.2d 209, 214 (7th Cir. 1975).

■ Appellant argues that the district court's findings do not amount to a showing of bad faith or wilful and wanton conduct as required by case law. As support, IH cites our decision in *Blake v. Bassick Co.*, 392 F.2d 879, 883 (7th Cir.), *cert. denied*, 393 U.S. 828, 89 S.Ct. 94, 21 L.Ed.2d 100 (1968), where an award of treble damages was found unwarranted in circumstances very similar to our own. There, an original attempt to obtain a license was abandoned in

---

11. *See Novo Industrial Corp. v. Standard Screw Co.*, 374 F.2d 824, 828 (7th Cir.), *cert. denied*, 389 U.S. 823, 88 S.Ct. 51, 19 L.Ed.2d 75 (1967), (secondary considerations may serve to guard against slipping into hindsight).

12. 35 U.S.C. § 284 provides in pertinent part:
    When the damages are not found by a jury, the court shall assess them. In either event the court may increase the damages up to three times the amount found or assessed.

favor of production of a device specifically modified to avoid infringement. *Id.* at 883–84. IH also points to *Continental Can Co. v. Anchor Hocking Glass Corp.*, 362 F.2d 123 (7th Cir. 1966), where this court reiterated its position that a defendant's action in seeking the advice of counsel gives rise to an inference of good faith. *Id.* at 129.

In *Milgo Electronic Corp. v. United Business Communications, Inc.*, 623 F.2d 645 (10th Cir.), *cert. denied*, 449 U.S. 1066, 101 S.Ct. 794, 66 L.Ed.2d 610 (1980), the Tenth Circuit considered the question of whether a defendant's actions in copying a design before a patent was issued (and where no indication of a pending application was present) amounted to wilfulness which would trigger the award of increased damages under § 284. Although in that case the court found the award warranted, the crucial factor in that determination was that no effort was made to secure an opinion of counsel. The court distinguished the Seventh Circuit decision in *Union Carbide Corp. v. Graver Tank & Manufacturing Co.*, 282 F.2d 653, saying that once the defendant had actual notice of plaintiff's patent rights, it "was under an affirmative duty to exercise due care to determine whether or not it was infringing [plaintiff's] patents." 623 F.2d at 666.

In light of the above cited cases, we believe that the district court was in error in awarding treble damages in this case. Examination of the design before issuance of the patent was clearly permissible, and the actions of IH subsequent to the patent grant are inconsistent with the requisite finding of bad faith. IH consulted its in-house counsel at the planning stage of the new harvester and, having received an opinion as to the appropriate design to avoid infringement, adopted that design. Prior to production, IH again had its patent attorney assess whether the prototype would infringe and relied on the conclusion that it did not. While this does not negate liability for infringement, it does negate an inference of wilful and wanton infringement.

Deere makes much of the fact that a promotional film distributed by IH touted its product as capable of adjustment by simply sliding the row units. IH withdrew this film after an IH engineer noticed the improper implication that no additional adjustment need be made to slide the units. A memo concerning that deleted language stated that it would be all Deere would need to win the case. Deere uses this memo to show that IH knew it was infringing the 110 Patent claims; the district court apparently accepted this view.

We think that since the machine being promoted by the film did *not* have the capability implied, the immediate effort to stop distribution of the film is understandable, not because it would somehow lead to adverse results in the patent infringement suit but because it would mislead potential purchasers. The memorandum may show a lack of understanding of the IH product's capabilities, but it certainly does not prove that IH purposely infringed the Deere patent.

With this in mind, and in view of the difficulty in assessing the extent of the claims and the question of validity where the scope of the patent is unclear, we cannot say that the evidence amounted to a showing of deliberate infringement. An award of increased damages is within the discretion of the trial judge and may only be reversed where there is an abuse of discretion. *Leesona Corp. v. United States*, 599 F.2d 958, 969 (Ct.Cl.), *cert. denied*, 444 U.S. 991, 100 S.Ct. 522, 62 L.Ed.2d 420 (1979). In this instance, we feel that reversal is necessary since the standards for an increased damage award were not met.

Nor can we say that an award of attorney's fees is merited in this case. Section 285 provides that an award of attorney's fees may be made in exceptional cases.[13] The purpose of the award is to prevent the gross injustice of having a prevailing party bear the cost of litigation in a suit where

---

**13.** 35 U.S.C. § 285 provides:
 The court in exceptional cases may award reasonable attorney fees to the prevailing party.

the conduct of the losing party is clearly inequitable. *Stanford Research Co. v. Eberhard Faber Pen and Pencil Co.*, 379 F.2d 512 (7th Cir. 1967). This court has interpreted the statutory language to require "an unambiguous showing of extraordinary misconduct." *Airtex Corp. v. Shelley Radiant Ceiling Co.*, 536 F.2d 145, 155 (7th Cir. 1976). Examples of conduct held to be extraordinary include repeated failure to respond to discovery requests, *L. F. Strassheim Co. v. Gold Medal Folding Furniture Co.*, 477 F.2d 818 (7th Cir. 1973), fraud on the patent office, *Shelco, Inc. v. Dow Chemical Co.*, 466 F.2d 613 (7th Cir.), *cert. denied*, 409 U.S. 876, 93 S.Ct. 125, 34 L.Ed.2d 129 (1972), and unclean hands in obtaining the patent, *Timely Products Corp. v. Arron*, 523 F.2d 288 (2d Cir. 1975). IH's conduct in attempting to avoid infringement by modification of its prototype and defending the subsequent suit is nothing if not the "ordinary" patent case. No evidence of bad faith conduct has been shown. The award of attorney's fees is not supported by the evidence and must be reversed.

## CONCLUSION

We have considered all of the parties' contentions and the authorities they relied on in making their arguments in this appeal. Although we have not commented on all the issues raised, they have been given consideration in the disposition of this case.

The judgment of the district court is affirmed as to the issues of infringement and validity and reversed as to the award of treble damages and attorney's fees to Deere.

## EXHIBITS

A. COMBINE
B. CORN HEAD
C. ROW UNITS
D. DRIVE SHAFT

JOHN DEERE 40 SERIES CORN HEAD

A. DRIVE SHAFT
B. DRIVE GEARS
C. SUPPORT BEAM
D. GEAR HOUSING
E. ROW UNIT

INTERNATIONAL HARVESTER 800 SERIES CORN HEAD

A. DRIVE SHAFT
B. COUPLER
C DRIVE GEARS
D. SUPPORT BEAM
E. GEAR HOUSING
F. ROW UNIT