**William BRADSHAW and Robert Shepherd, Plaintiffs, Counterdefendants,**

v.

**IGLOO PRODUCTS CORPORATION, Defendant, Counter-claimant.**

No. 94 C 6497.

United States District Court, N.D. Illinois, Eastern Division.

Jan. 5, 1996.

Jeffrey W. Brend, Levin & Brend, Chicago, Illinois, Neal C. Zazove, Zazove & Associates, Chicago, Illinois, for plaintiffs.

Richard G. Lione, Kevin J. McDevitt, Willian, Brinks, Olds, Hofer, Gilson & Lione, Ltd., Chicago, Illinois, J. Ray Riley, Houston, Texas, for defendant.

## *MEMORANDUM OPINION AND ORDER*

HART, District Judge.

Plaintiffs William Bradshaw and Robert Shepherd are the inventors of the "Cool Wheeler," a portable cooler on wheels. They also own the patent for this invention, United States Patent No. 4,873,841 (the " '841 patent"), which describes the invention as follows:

> A portable cooler comprising a cooling compartment having a pair of wheels coupled thereto at one end thereof and having a handle positioned on and coupled to one side of the cooling compartment opposite said wheels for pulling the portable cooler. The handle is angularly adjustable about an axle when the cooler is being pulled and is secured to the cooler when not in use. A pair of lifting handles are positioned on opposite sides of the cooler for lifting the cooler to and from a vehicle.

Drawing sheets 1 and 2 set forth in the '841 patent are as follows:

FIG. 1

FIG. 2

FIG_3_

FIG_4_

FIG_5_

FIG_6_

FIG_7_

Plaintiffs claim that defendant Igloo Products Corp. has produced two lines of products that infringe the '841 patent, the "Cool Roller" and "Rolling Kool Locker," both of which are portable coolers on wheels. Plaintiffs also claim trademark infringement in violation of the Illinois Deceptive Trade Practices Act, 815 ILCS 5101 et seq. They state that Igloo's use of the names "Cool Wheels," a name used for the Cool Roller until August 1993, and "Wheelie Cool," a type of Cool Roller, violate their trademark.

Presently pending is defendant's motion for summary judgment. Defendant contends that its products do not infringe plaintiffs' invention because its products do not use the same type of handle as plaintiffs' invention, which defendant contends is the only aspect of the invention that is distinctive from prior art. To the extent the claims in plaintiffs' patent were to be construed more broadly or the doctrine of equivalents applied, defendant contends that the patent is invalid in light of prior art. Defendant also contends that the trademark claim is subject to dismissal on summary judgment because plaintiffs' trademark, although registered with the state, has not been used for the actual sale of any products and therefore is not protected under Illinois law. Alternatively, it is contended that Cool Wheeler is a descriptive term that has not developed a secondary meaning.

On a motion for summary judgment, the entire record is considered with all reasonable inferences drawn in favor of the nonmovants and all factual disputes resolved in favor of the nonmovants. *Lane Bryant, Inc. v. United States,* 35 F.3d 1570, 1574 (Fed.Cir. 1994); *Oxman v. WLS–TV,* 846 F.2d 448, 452 (7th Cir.1988); *Jakubiec v. Cities Service Co.,* 844 F.2d 470, 471 (7th Cir.1988). The burden of establishing a lack of any genuine issue of material fact rests on the movant. *Glaverbel Societe Anonyme v. Northlake Marketing & Supply, Inc.,* 45 F.3d 1550, 1560–61 (Fed.Cir.1995); *Jakubiec,* 844 F.2d at 473. The nonmovants, however, must make a showing sufficient to establish any essential element for which they will bear the burden of proof at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The movant need not provide affidavits or deposition testimony showing the nonexistence of such essential elements. *Id.* at 324, 106 S.Ct. at 2553. Also, it is not sufficient to show evidence of purportedly disputed facts if those facts are not plausible in light of the entire record. *See Paragon Podiatry Laboratory, Inc. v. KLM Laboratories, Inc.,* 984 F.2d 1182, 1191 (Fed.Cir.1993); *Covalt v. Carey Canada, Inc.,* 950 F.2d 481, 485 (7th Cir. 1991); *Collins v. Associated Pathologists, Ltd.,* 844 F.2d 473, 476–77 (7th Cir.), *cert. denied,* 488 U.S. 852, 109 S.Ct. 137, 102 L.Ed.2d 110 (1988); *TRW Financial Systems, Inc. v. Unisys Corp.,* 835 F.Supp. 994, 1002 (E.D.Mich.1993). As the Seventh Circuit has summarized:

> The moving party bears the initial burden of directing the district court to the determinative issues and the available evidence that pertains to each. "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 [106 S.Ct. 2548, 2553, 91 L.Ed.2d 265] (1986); *id.* at 325 [106 S.Ct. at 2554] ("the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case"). Then, with respect to issues that the nonmoving party will bear the burden of proving at trial, the non-moving party must come forward with affidavits, depositions, answers to interrogatories or admissions and designate specific facts which establish that there is a genuine issue for trial. *Id.* at 324 [106 S.Ct. at 2553]. The non-moving party cannot rest on the pleadings alone, but must designate specific facts in affidavits, depositions, answers to interrogatories or admissions that establish that there is a genuine triable issue. *Id.* The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushi-*

**1094**

ta Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 [106 S.Ct. 1348, 1355, 89 L.Ed.2d 538] (1986). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 [106 S.Ct. 2505, 2512, 91 L.Ed.2d 202] (1986).

*Selan v. Kiley*, 969 F.2d 560, 564 (7th Cir. 1992). *See also Glaverbel*, 45 F.3d at 1560–61 & n. 3.

"[I]nfringement analysis entails two steps. The first step is determining the meaning and scope of the patent claims asserted to be infringed. The second step is comparing the properly construed claims to the device accused of infringing." *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed. Cir.) (en banc), *cert. granted*, — U.S. —, 116 S.Ct. 40, 132 L.Ed.2d 921 (1995). The Federal Circuit has recently clarified that the construction of claims is a question of law for the court, not a jury question. *Id.* at 976–79. Although the Supreme Court has granted *certiorari* and apparently will consider that issue, the decision in *Markman* remains binding unless the Supreme Court should rule otherwise. *Ritter v. Smith*, 811 F.2d 1398, 1404–05 (11th Cir.), *cert. denied*, 483 U.S. 1010, 107 S.Ct. 3242, 97 L.Ed.2d 747 (1987); *United States ex rel. Daneff v. Henderson*, 501 F.2d 1180, 1181 (2d Cir. 1974). *See also United States v. Weber*, 668 F.2d 552, 566 (1st Cir.1981), *cert. denied*, 457 U.S. 1105, 102 S.Ct. 2904, 73 L.Ed.2d 1313 (1982).

█ Construing a patent is similar to construing a contract or statute, but not precisely the same as either. *See Markman*, 52 F.3d at 978, 986–87. A patent application must include a specification, which is "a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains ... to make or use it." 35 U.S.C. § 112, 1st para. The specification is to include "one or more claims particularly pointing out and distinctly claiming the subject matter which the applicant regards as his invention." *Id.* § 112, 2d para. It is the

claims that are subject to infringement, not the specification. *SRI International v. Matsushita Electric Corp. of America*, 775 F.2d 1107, 1121 (Fed.Cir.1985) (en banc); *Katz v. AIWA America, Inc.*, 818 F.Supp. 730, 739 (D.N.J.1993).

█ "To ascertain the meaning of claims, we consider three sources: The claims, the specification, and the prosecution history." *Markman*, 52 F.3d at 979 (quoting *Unique Concepts, Inc. v. Brown*, 939 F.2d 1558, 1561 (Fed.Cir.1991)). Here, the prosecution record has not been presented, so it need not be considered. *Cf. Markman*, 52 F.3d at 980 ("the court should also consider the patent's prosecution history, if it is in evidence"). Drawings are part of the specification that may be considered in understanding the meaning of a claim. *Omark Industries, Inc. v. Textron, Inc.*, 688 F.2d 1242, 1249 (9th Cir.1982); *Transco Products Inc. v. Performance Contracting, Inc.*, 813 F.Supp. 613, 618 (N.D.Ill.1993). At the court's discretion, extrinsic evidence may be considered to aid in understanding the patent, but not for the purpose of varying or contradicting terms of the claims. *See Markman*, 52 F.3d at 980–81. Extrinsic evidence that may be considered includes inventor and expert testimony, dictionaries, and learned treatises. *Id.* at 980. A court is not obliged to consider expert testimony and is not bound by an expert's characterization; an expert may explain terms that might not be understandable or show how those in the field might have understood the patent. *See id.* at 981. Also, the prior art is often, but not always, pertinent to the construction of the claims. *See Rawlplug Co. v. Illinois Tool Works, Inc.*, 11 F.3d 1036, 1041 (Fed.Cir.1993); *Kearns v. Chrysler Corp.*, 32 F.3d 1541, 1547 (Fed.Cir. 1994), *cert. denied*, — U.S. —, —, 115 S.Ct. 1392, 1393, 131 L.Ed.2d 244 (1995).

The parties agree that only the three independent claims of the '841 patent need be considered, Claims 1, 6, and 11. Claim 1 is:

1. A portable cooler comprising:

[a] a cooling compartment;

[b] an axle positioned through the lower portion of one end of the cooling compart-

ment and extending beyond the sides of the cooling compartment;

[c] a pair of wheels, one of which is coupled to each end of the axle;

[d] a wheel nut coupled to the end of axle securing said wheels to the axle;

[e] a pair of handle support structures coupled to opposite sides of the cooler compartment each support structure having a handle support axle;

[f] a lifting handle coupled to the handle support axle of each handle support structure enabling the cooler to be easily lifted to and from a vehicle; and

[g] a pulling handle coupled to one of the handle support axles wherein said pulling handle being easily rotated about the handle axle enabling a user to easily and comfortably pull the portable cooler.

Claim 6 is a variation on Claim 1. The axle holding the wheels are attached to extensions under the cooler compartment instead of to an axle going through the cooler compartment. That distinction is not pertinent to the present dispute. Claim 6, unlike Claim 1, expressly states that the pulling handle is attached to the side opposite the wheels and that the lifting handles are on that side and the wheel side.

6. A portable cooler comprising:

[a] a cooling compartment;

[b] axle support extensions coupled to the underside of said cooling compartment at one end thereof having a semi-circular groove;

[c] an axle being positioned within the semi-circular groove of the axle support extensions and said axle extending beyond the sides of the cooling compartment;

[d] a pair of wheels, coupled to each end of the axle;

[e] a wheel nut coupled to each end of the axle thereby inhibiting the wheel from falling off the axle;

[f] a pair of handle support structures coupled to opposite sides of the cooler compartment each support structure having a handle support axle, wherein one of said pair of handle support structures is positioned on the side of the cooler adjacent the wheels;

[g] a lifting handle coupled to the handle support axle of each handle support structure; and

[h] a pulling handle coupled to the handle support axle of the handle support structure opposite the wheels, said pulling handle being easily rotated about the handle axle enabling a user to easily and comfortably pull the portable cooler.

Claim 11 also involves a variation as to how the wheels are attached, including a groove on the underside of the cooling compartment. This variation is not pertinent to the present dispute.

11. A portable cooler comprising:

[a] a cooling compartment;

[b] a semi-circular groove positioned on the underside of the cooling compartment at one end thereof suitable for receiving an axle;

[c] an axle positioned within said semi-circular groove of a length extending beyond the sides of the cooling compartment;

[d] a pair of wheels coupled to each end of the axle;

[e] a wheel nut coupled to each end of the axle thereby inhibiting the wheel from falling off the axle;

[f] a pair of handle support structures coupled to opposite sides of the cooler compartment each support structure having a handle support axle, wherein one of said pair of the handle support structures is positioned on the side of the cooler adjacent the wheels;

[g] a lifting handle coupled to the handles support axle of each handle support structure; and

[h] a pulling handle coupled to the handle support axle of the handle support structure opposite the wheels, said pulling handle being easily rotated about the handle axle enabling a user to easily and comfortably pull the portable cooler.

Plaintiffs provide an affidavit of a testing engineer asserted to have ordinary skill in the art, Dr. Crispin Hales. Hales is a mechanical engineer with a Ph.D in engineering design. He describes the key features of the patent as follows:

Key features of the *Bradshaw et al.* '841 patent are the addition of an axle with two wheels at the bottom of one end of a conventional cooling compartment fitted with lifting handles, and the addition of a pulling handle at the top of the other end. These features are shown diagrammatically in Figure 1. The wheels without the pulling handle are of no practical use and the pulling handle without the wheels is of no practical use. Positioning the pulling handle as close to the top of the cooling compartment as practicable is important to the concept as this minimizes the tilt of the unit as it is pulled along and therefore minimizes the 'slosh' angle of any liquids in the cooling compartment. It also enables the user to easily and comfortably pull the portable cooler. The precise position of the pivot point used for the lifting handles is not important to the concept so long as it remains above the center of gravity of a loaded cooler lid and adequate hand clearance is maintained between the handle and the cooler lid. The top of the cooling compartment is considered to be the top of the sides of the cooler when the lid is open.

Defendant objects that Hales's conclusory statement in his affidavit that he is a person of ordinary skill in the art is not supported by specific facts in that Hales's curriculum vitae does not support this assertion because it shows no work in the field of coolers or portable objects. Hales has not been shown to be a person of ordinary skill in the art of designing portable coolers or other portable items of similar nature. To the extent it is pertinent and helpful, however, his expert opinion may still be considered in construing the claims. *See CVI/Beta Ventures, Inc. v. Tura LP*, 905 F.Supp. 1171, 1182 (E.D.N.Y.1995). Also, a person of ordinary skill in the art is a hypothetical construct. *See In re GPAC, Inc.*, 57 F.3d 1573, 1579 (Fed.Cir.1995); *In re Nilssen*, 851 F.2d 1401, 1403 (Fed.Cir.1988). Testimony of persons who are not ones of ordinary skill in the art may still be relevant to determining the views of one with ordinary skill in the art. *See In re Mahurkar Double Lumen Hemodialysis Catheter Patent Litigation*, 831 F.Supp. 1354, 1359 (N.D.Ill.1993) (testimony of person with extraordinary skill in the art is still relevant in determining the views of one of ordinary skill in the art). Hales's affidavit will be considered in interpreting the patent. It may be considered that he has studied the prior art and has some expertise applicable to the field. *See CVI/Beta Ventures*, 905 F.Supp. at 1182. However, the difficulty with Hales's analysis is that it is not supported by what is shown in the patent.

The drawings in the patent show the pulling handle is attached near the top of the cooler compartment. However, no language in the patent notes that the height at which the pulling handle is attached is of significance. The objectives of the invention are described as follows:

It is an object of our invention to provide a portable cooler that can be easily pulled without injury to the person pulling it.

It is another object of our invention to provide a portable cooler having a pair of wheels coupled to the underside of one end of the cooler and a pulling handle coupled to the side of the cooler opposite the wheels.

It is a further object of our invention to provide a portable cooler wherein the pulling handle is snapped to the cooler and not extended when not being pulled.

It is a further object of our invention to provide a portable cooler having a pair of lifting handles on opposite sides of the cooler for lifting the cooler to and from a vehicle.

In describing the preferred embodiment, there is no indication that the height of the pulling handle on the cooler is important, only a statement that the handle be attached to the side opposite the wheels and that it be long enough so that a person does not have to bend over to pull it.

The pulling handle is coupled to the lifting handle support structure positioned opposite the wheels. The pulling handle is of a length suitable for enabling a person to easily pull the portable cooler without stooping. The pulling handle has a pair of pulling handle apertures suitable for being received by the handle axle. The pulling

handle is positioned on the outside of the handle support flanges and coupled to the handle axle by retaining pins, not illustrated, but well known in the art, or by other suitable means well known in the art. The axle extends beyond the support flanges a sufficient length to enable it to extend through the pulling handle apertures. The handle may be rotated about the handle axle for pulling the portable cooler. When not in use, i.e., being pulled, the handle fits snugly against a handle clip coupled to the cooler box by means well known in the art enabling the handle to fit snugly therein, however, being easily removed therefrom when the portable cooler is to be pulled.

In the background section of the patent, no mention is made of the height at which the handle is attached.

... Our portable cooler, unlike those existing in the market, is compact, having a pair of wheels coupled to the underside of one end of the cooler and a pair of lifting handles on opposite sides of the cooler for lifting the cooler to and from a vehicle.

A pulling handle is coupled to the lifting handle positioned on the side opposite the wheels. The pulling handle swivels about an axle when in use so as to enable the best leverage between cooler and person to be obtained. This enables the least amount of force to be exerted by the person pulling the cooler....

The background section notes the benefit of ease of transportation, a compact shape, and a slope and drain that permits water from melting ice to drain out. There is no mention of the device being designed to be transported with a minimal slope so as to minimize sloshing of liquids.

The patent expressly notes the importance of the wheels being located on the lower side. It specifically states the need to have the pulling handle on the side opposite the wheels. It recites that ease of use requires that the pulling handle rotate on its axle and that the handle be long enough that a person does not have to stoop while pulling it. There is no written statement that the pulling handle be attached near the top of the cooler, though it is so pictured in the draw-ings provided. There is no statement that so locating the handle is either important to ease of use or a feature distinctive from other coolers.

Plaintiffs point to three possible infringing devices: the Cool Roller prototype, the Cool Roller actually distributed, and the Rolling Kool Locker. Defendant does not dispute that the prototype copies the '841 patent. Defendant contends, however, that the prototype cannot be a basis for an infringement claim because it was only a representation of a portable cooler, not a product actually produced, used, or sold. As to the other two devices, defendant contends they do not infringe because they have pulling handles distinct from the '841 patent.

Like the '841 patent, the Rolling Kool Locker contains two wheels on one side. Unlike the '841 patent, the Rolling Kool Locker contains a single handle on each side. These handles are attached to the top rim of the cooling compartment and both are on an axle that permits them to rotate up. The handle on the side opposite the wheels can be used as a lifting handle (in conjunction with the lifting handle on the other side) or as a pulling handle, by itself.

The Cool Roller also has two wheels on one side. On the same side as the wheels there is a single lifting handle attached a few inches below the top of the cooling compartment. On the opposite side there is another lifting handle attached at the same height. A pulling handle is also located on the side opposite the wheels. It is about an inch above the lifting handle and below the top of the side of the cooling compartment. There is one axle on this side for the pulling handle. The lifting handle is inserted in a plate separately attached to the side below the pulling handle axle. The lifting handle is basically U-shaped, and attached to two sockets rather than an axle.

Defendant contends that the Rolling Kool Locker and Cool Roller do not infringe the '841 patent because they do not contain that invention's purportedly distinctive feature of having separate pulling and lifting handles on a single axle. Plaintiffs contend the single axle is not a feature of their inven-

tion and that defendant's handles either literally infringe or are equivalent to plaintiffs' handle. Plaintiffs contend that the distinctive feature of their pulling handle is that it is attached near the top of the cooler compartment. Since the pulling handle on both of defendant's devices are attached near the top of the cooling department, and all other features of plaintiffs' invention are replicated, plaintiffs contend that defendant's devices infringe their patent.

Defendant concedes that its two devices follow each element of plaintiff's three independent claims except the last two elements of each which are: "a lifting handle coupled to the handle support axle of each handle support structure [enabling the cooler to be easily lifted to and from a vehicle]; and a pulling handle coupled to [one of] the handle support axles wherein said pulling handle being easily rotated about the handle axle enabling a user to easily and comfortably pull the portable cooler." Claim 1[f]–[g].[1] Defendant contends "coupled" should be given its ordinary dictionary meaning of "join[ed] for combined effect," *Webster's Ninth New Collegiate Dictionary* 298 (1988), which is the definition adopted by Hales and implicitly adopted by one of the inventors at his deposition, Bradshaw Dep. at 114. The claims state the pulling handle is "coupled ... to the handle support axles," and unambiguously state that the pulling handle is attached to a handle support axle. Element [e] of Claim 1 and element [f] of Claims 6 and 11 make clear that the device contains only one axle on each side, meaning the pulling and lifting handle must be attached to the same axle. Element [g] of Claim 1 clearly is referring to the pulling handle being attached to one of the lifting handle axles ("coupled to *one of the* handle support axles"), as does element [h] of Claims 6 and 11 ("coupled to *the* handle support axle of the handle support structure opposite the wheel"). The claim language is

also clear that there are two separate handles on the side opposite the wheels. This construction of the plain language of the claims is also consistent with the drawings (Figures 1 & 3) which show two handles attached to a single axle and is consistent with language in the specification.

The single pulling/lifting handle on the Rolling Kool Locker and the Cool Roller's use of separate attachments for the lifting and pulling handles are forms distinct from the claims for plaintiffs' invention. Therefore, there is no literal infringement. Plaintiffs, however, contend that defendant's handles serve the same function and therefore defendant's coolers are infringing devices under the doctrine of equivalence.

The focus of equivalence is whether any difference between the two products is insubstantial, as viewed from an objective standard. *Hilton Davis Chemical Co. v. Warner–Jenkinson Co.*, 62 F.3d 1512, 1518 (Fed.Cir.1995) (en banc). Traditionally, the focus has been on whether there are no substantial differences in function, way, and result. *See id.* The Federal Circuit, however, recently clarified that this is not the only test of equivalence and that other factors may also be considered. *Id.* Other possible factors to consider are: (a) whether persons reasonably skilled in the art would have known of the interchangeability of an element; (b) whether the accused device was developed through copying; and (c) whether the accused device was designed around the earlier device.[2] *Id.* at 1519–20. Whether an invention is a pioneer development in the field is also a consideration in equivalency analysis. "The concept of the 'pioneer' arises from an ancient jurisprudence, reflecting judicial appreciation that a broad breakthrough invention merits a broader scope of equivalents than does a narrow improvement in a crowded technology." *Sun Studs, Inc. v.*

---

1. Elements [g] and [h] of Claims 6 and 11 are the same except they do not include the bracketed phrases and [h] more specifically identifies where the pulling handle is attached, "coupled to the handle support axle of the handle support structure opposite the wheels."

2. Copying and designing around are similar activities; the former involving insubstantial

changes and the latter substantial changes. Designing around ordinarily involves an improvement, *see Hilton Davis*, 62 F.3d at 1520, but equivalence can still be found even if there is some improvement in the new device, *see Ryco, Inc. v. Ag–Bag Corp.*, 857 F.2d 1418, 1427 (Fed. Cir.1988); *Datascope Corp. v. SMEC, Inc.*, 776 F.2d 320, 326–27 (Fed.Cir.1985).

*ATA Equipment Leasing, Inc.,* 872 F.2d 978, 987 (Fed.Cir.1989). *Accord Slimfold Manufacturing Co. v. Kinkead Industries, Inc.,* 932 F.2d 1453, 1457 (Fed.Cir.1991). Also, a "range of equivalents may not embrace inventions already disclosed by prior art." *Key Manufacturing Group, Inc. v. Microdot, Inc.,* 925 F.2d 1444, 1449 (Fed.Cir.1991). Whether two devices are equivalent is a question of fact. *Hilton Davis,* 62 F.3d at 1520–21.

▇▇▇ The '841 patent was filed on April 3, 1989 and issued on October 17, 1989. It is not the first patented portable cooler on wheels. The 1943 "Zimmerman" patent (United States Patent No. 2,317,871), has four wheels on the bottom and is a pushcart, not something that is pulled. The "Guelgold" patent (United States Patent No. 3,314,688), issued in 1967, is a portable cooler with a pair of wheels on each side and a pulling handle attached near the top of the cooler, but the handle is attached to the sides, not the front. Its pulling handle folds over the sides to the back of the cooler compartment. The "Vega" patent (United States Patent No. 3,591,194), issued in 1971, is a two-wheel ice chest that is pulled, but its wheels are on the short side and the pulling handle is attached underneath. The 1988 "Bartholomew" patent (United States Patent No. 4,724,681) is a two-wheel cooler that is pulled, but its wheels are on the short side and the pulling handle, which folds in two places, is on the same side as the wheels.

The "Mason" patent (United States Patent No. 4,846,493), filed in 1987, is a two-wheel cooler, but its wheels are on hinges that fold down for pulling and fold up so the cooler can lay flat. Its pulling handle is on the side opposite the wheels and has a hinge so that it can be folded in half. When unfolded, the pulling handle is long enough to permit pulling the handle without stooping. It is indicated that the pulling handle is attached below the lifting handle, but its exact location

is not specified. Drawings show the pulling handle attached above the middle of the cooler's side.[3]

The "Wickersham" patent (United States Patent No. 4,976,448) was filed on August 1, 1989 and issued in 1990, after the '841 patent. However, on June 13, 1988, a previous application had been filed disclosing the design pertinent to the present lawsuit. That application was abandoned before approved. Since the 1989 application is a continuation-in-part of the prior application, the June 1988 filing is the pertinent date for determining the Wickersham design is prior art to the '841 patent. *See In re Wertheim,* 646 F.2d 527, 533–34 (C.C.P.A.1981); *Ford Motor Co. v. Lemelson,* 1995 WL 628330 *4–5 (D.Nev. June 16, 1995); *Ramos v. Boehringer Manheim Corp.,* 861 F.Supp. 1064, 1069 & n. 2 (S.D.Fla.1994). The Wickersham patent discloses two embodiments, one of which is illustrated in Figures 1 through 3. That embodiment discloses a two-wheel design like the '841 patent and defendant's devices with a U-shaped pulling (towing) handle attached near the top of the opposite side. The pulling handle also acts as a support when folded down. It is expressly stated that the pulling handle, when in towing position, is designed so that the cooler can be maintained in a relatively level position when towed across uneven ground. It is also stated to be designed to accommodate the lifting handles normally mounted on the sides of commercially available coolers.

Defendant also points to the 1946 "Kelly" patent (United States Patent No. 2,392,926). That is a patent for pullable luggage on wheels. It discloses a pulling handle attached to the top for ease in pulling. However, it also has wheels on the bottom and either a handle that folds in half or one that folds over the top of the piece of luggage.

The Wickersham patent shows that attaching a pulling handle near the top of the

---

**3.** The handle design is not part of the claims in the Mason patent, which claims a "means connected to said cooler for pulling the same when the wheels are in the operable position" that "is mounted to the forward end." The diagrams and specification, however, disclose the pulling handle design described. For purposes of the

present case, the diagrams constitute prior art, and a person of ordinary skill in the art is assumed to know of all prior art. *See Mooney v. Brunswick Corp.,* 663 F.2d 724, 733 (7th Cir. 1981); *Symbol Technologies, Inc. v. Opticon, Inc.,* 1989 WL 38134 *5 (S.D.N.Y. Feb. 27, 1989).

cooler compartment on the side opposite two wheels was already disclosed by prior art. The Mason patent also indicates the pulling handle should be attached at the top. The Mason patent also shows that attaching the pulling handle on a separate device below the lifting handle is not an innovation. The Kelly patent reveals that attaching a handle near the top of a side may be the most effective location, though it does not apply that idea to portable coolers and it was more than 40 years later before anyone did. In light of the prior art, defendant's devices cannot be found to be equivalent infringements based on having pulling handles attached near the top of a side opposite two wheels. If plaintiffs' patent were construed to extend to such an equivalent, the patent would be invalid in light of the prior art.

Hales's affidavit is insufficient to support equivalence. Hales states that the handles on defendant's two devices and the '841 patent are equivalent because the forces exerted through the handles during pulling operate in the same manner. All he says, however, is that force travels through the handles during pulling. He does not explain how the force going through the handles of these devices is any different than the force that would go through a handle attached lower on the side opposite the wheels or one attached below or on two sides like the Guelgold patent.

On the evidence presented, a reasonable finder of fact could not find that the pulling handles on the Cool Roller and the Rolling Kool Locker are equivalent to the pulling handle claimed in the '841 patent. The infringement claims based on the Cool Roller and the Rolling Kool Locker will be dismissed.

■ There is still the question of whether the prototype Cool Roller was used in an infringing manner. Plaintiffs present evidence that defendant used a prototype Cool Roller, then known as Cool Wheels, or a photograph of the prototype in a large number of marketing presentations selling their product. The actual products that were delivered, however, were Cool Rollers that it has been held were not infringing products. Defendant contends this conduct does not constitute infringement because the actual sales were not sales of the potentially infringing prototype model.

Neither party cites authority and no case was found involving the same circumstances as the present case, *i.e.*, promoting sales with an infringing device, but substituting a noninfringing device for completed sales. Most of the cases discussing whether using a potentially infringing device in promotions, advertising, or demonstrations are infringing conduct are venue cases determining whether "acts of infringement" occurred within a particular venue. *See* 28 U.S.C. 1400(b); *Intermedics, Inc. v. Ventritex, Inc.*, 775 F.Supp. 1269, 1285 (N.D.Cal.1991), *aff'd*, 991 F.2d 808 (Fed.Cir.1993). Whether promotional conduct that results in sales is an act of infringement is a question distinct from whether such conduct without a sale is itself actionable conduct. *See id.* In cases directly addressing the question of whether promotional activity involving an infringing device, but not culminating in a sale of the infringing device, constitutes a violative "use" under 35 U.S.C. § 271(a), courts have generally held to the contrary. *See id.* at 1285–86 (collecting cases); D. Chisum, *Patents* § 16.02[4] (1995) (collecting cases).[4] Some of those cases are situations in which the defendant was trying to sell the infringing products, but no sales resulted. Others are situations in which the defendant was attempting to sell a noninfringing product and only using the patented device for comparison or other promotional or demonstrative purposes. Some of the latter type of cases resulted in sales of noninfringing products. The present case is a cross between those two situations, defen-

4. Plaintiffs cite *Deere & Co. v. International Harvester Co.*, 460 F.Supp. 523, 532 (S.D.Ill.1978), *rev'd & remanded by unpublished order*, 618 F.2d 110 (7th Cir.1980), *additional finding made*, 496 F.Supp. 397 (C.D.Ill.1980), *aff'd in part, rev'd in part*, 658 F.2d 1137 (7th Cir.), *cert. denied*, 454 U.S. 969, 102 S.Ct. 514, 70 L.Ed.2d 386 (1981). Plaintiffs apparently meant to cite page 533 of that opinion which contains findings regarding use of a promotional film that was subsequently withdrawn. Those findings mainly focus on the withdrawal of the film upon the advice of counsel as being evidence of wilful infringement. There is no holding in *Deere* that depiction of an infringing device in a promotional film is, by itself, an infringing use.

dant attempted to sell the infringing product as in the former situation, but only ended up selling noninfringing products as in some of the latter situations. Since use of a patented product for promotional purposes is not itself a "use" violating § 271(a) and since there was no "sale" of the potentially infringing product, there is no violation of § 271(a). Defendant's use of the prototype for promotional purposes was not an infringement of the '841 patent. Plaintiffs' patent infringement claims will be dismissed.

Defendant also filed a counterclaim in which it seeks a declaration that plaintiffs' patent is invalid and that defendant's products do not infringe the patent. Since plaintiffs' patent infringement action is being dismissed, there is no need for declaratory relief as to noninfringement. The request for declaratory relief as to noninfringement will be dismissed as moot. With plaintiffs' infringement action dismissed, there is also no remaining case or controversy that would support retaining jurisdiction over the declaratory action as to invalidity. Therefore, there is no remaining dispute supporting the case or controversy requirement of subject matter jurisdiction. The counterclaim will be dismissed without prejudice. Since all the federal claims are being dismissed, plaintiffs' state law trademark claims will be dismissed without prejudice. *See* 28 U.S.C. § 1367(c)(3).

IT IS THEREFORE ORDERED that defendant's motion for summary judgment [43–1] is granted. The Clerk of the Court is directed to enter judgment in favor of defendant and against plaintiffs dismissing plaintiffs' federal cause of action with prejudice and plaintiffs' state law cause of action without prejudice for lack of subject matter jurisdiction. The Clerk of the Court is further directed to enter judgment dismissing defendant-counterplaintiff's counterclaim cause of action without prejudice for lack of subject matter jurisdiction.